18403

Wendell R. BEVERLY, a Minor, By and Through R. B. Beverly, His Guardian *Ad Litem,* Plaintiff-Respondent, v. Heyward E. SARVIS, Respondent, and Laurence S. Barringer, Jr., Appellant.

(144 S. E. (2d) 220)

*Messrs. Burroughs & Green,* of Conway, *for Appellant,*

472

*Messrs. J. Reuben Long,* of Conway, *for Plaintiff-Respondent,*

September 23, 1965.

BUSSEY, Justice.

In this action the respondent, Beverly, sought to recover from the respondent, Sarvis, and the appellant, Barringer, damages for personal injuries sustained in an automobile collision. Beverly at the time of the collision was riding in an automobile owned by his mother, and being operated by Sarvis, which said automobile collided with one operated by Barringer. Sarvis filed a cross-complaint against his co-defendant Barringer, and, on the trial of the case, the jury returned verdicts favorable to both Beverly and Sarvis against the appellant Barringer.

The appeal is from an order of the trial judge overruling Barringer's motion for judgments *non obstante veredicto* in his favor. Appellant's single exception is based on the contention that the court should have granted his motion for directed verdicts, on the ground that the only reasonable inference to be drawn from the evidence was that both Sarvis and Beverly were barred from recovery by contributory negligence and recklessness on the part of Sarvis. For the purpose of this appeal it is conceded that any negligence or recklessness on the part of Sarvis is imputable to Beverly. In oral argument, counsel for appellant conceded that the evidence was quite sufficient to take to the jury the issue of willfulness on the part of appellant and, hence, he only issue for decision is whether Sarvis was guilty of contributory recklessness or willfulness as a matter of law.

This question has to be decided in the light of well-established principles of law. It is elementary, and requires no citation of authority, that the evidence, and all inferences reasonably deducible therefrom, must be considered in the light most favorable to the respondents, and if more than one reasonable inference can be drawn from the evidence, or if the inferences to be drawn therefrom are in conflict or doubt, the issue of contributory willfulness was an issue of fact for the jury, rather than an issue of law for the court.

We, accordingly, proceed to review the evidence in the light of the foregoing principles. The collision occurred on the night of January 28, 1962, at a point on Highway No. 378, approximately twenty miles west of Conway, South Carolina. Barringer, a young man, was driving a Buick automobile in a westerly direction and was accompanied by four other young people. His party had spent the weekend at the beach and were on a return trip to Columbia. A deer ran across the highway from Barringer's left and was struck by the left front portion of the Buick. The force of the impact hurled the deer back in the direction from whence it came, to the shoulder area on the south side of the highway. Barringer stopped, backed up, and then drove to his left of the highway and stopped near where the deer had fallen. Although the evidence is conflicting thereabout, there is evidence to the effect that a substantial portion of the Buick automobile, if not all thereof, was parked on the paved portion of the highway.

It was decided by one of Barringer's party that they should load the deer into the trunk of the car and take it with them, and arrangements to that end were being made when the Ford car driven by Sarvis and occupied by Beverly approached from a westerly direction. Sarvis and Beverly both apparently lived in the vicinity of Conway and were returning from a trip to Sumter. There is nothing in the record to show that either of them was familiar with the highway at that location. At the scene of the collision the paved portion

of the highway was approximately twenty-two feet wide, and straight in that immediate locality, but at a point approximately one-half mile to the west thereof it curves. Sarvis testified that as he came around the curve and approached the scene of the collision he was driving "between 55 and 60"; "55 or 60", and "55 to 60". There is no evidence of any greater speed on his part. His narrative description of the collision was as follows:

"Well, I was coming down 378 toward Conway and I seen these lights on the highway and they were so bright I couldn't watch the light and I was watching the right-hand side of the highway and staying on my side of the road and when I looked back up, I was right on top of the car and I slammed on my brakes and that's the last I remember until they were taking me out of the car."

While the lights on the Barringer automobile were visible to Sarvis for approximately one-half mile, he testified that he was "not too awfully far" therefrom when said lights first blinded him or interfered with his vision, and at that time, he could not tell that the Barringer car was on its left-hand side of the road. Just how far Sarvis traveled, after being at least partially blinded by these lights, with his vision centered on his side of the road in an effort to make sure that he stayed in his lane, does not appear in the record, but he estimated that he was about fifty feet from the Barringer automobile when he first realized it was on his side of the road. That such estimate on his part was most probably only an erroneous guess is shown by the testimony of the highway patrolman who investigated the collision. With further reference to speed, he testified that he wasn't watching the speedometer and that he might have slowed down a little bit before realizing that the Barringer automobile was on his side of the road, but did not know whether he actually did.

The testimony of the highway patrolman who investigated the collision was to the effect that the Ford automobile driven by Sarvis laid down skid marks of seventy-five feet, steel

tape measurement, prior to impact; and that such skid marks were in Sarvis' proper lane, the right-hand one being near the edge of the pavement. He also testified to the effect that the front of each of the cars, with the exception of their respective left fenders, bore the brunt of the impact.

When the testimony of the patrolman as to the length of the skid marks is considered, together with the normal reaction time of the average driver, it readily appears that Sarvis was substantially more than one hundred feet away from the Barringer automobile when he first realized that such was on the wrong side of the highway.

The scene of the collision was in open country; except for the vehicles involved therein, there was no other traffic upon the highway and no rain or fog. With the exception of the hazard created by the Barringer automobile, parked on the wrong side of the highway, there was no condition or circumstance which would require the operator of an automobile, in the exercise of due care, to drive at a speed less than the *prima facie* limit of 55 miles per hour. Except for the lights of the Barringer automobile, there was nothing to warn Sarvis that such automobile was on the wrong side of the road. The evidence is conflicting as to whether said lights were on high or low beam immediately prior to the impact. The foregoing summary of the evidence, we think, is sufficient for the purpose of deciding the single question presented by the appeal.

No case in point on the facts has been cited by counsel and none has come to our attention. It is argued by appellant that respondents should be barred because Sarvis was exceeding the *prima facie* speed limit of 55 miles per hour. This contention is clearly without merit. The excess, if any, was slight. By virtue of Code Section 26-7, exceeding the *prima facie* speed limit of 55 miles per hour is not negligence *per se*. *Chapman v. Associated Transport,* 218 S. C. 554, 63 S. E. (2d) 465, 469; *Hiott v. Bishop,* 244 S. C. 524, 137 S. E. (2d) 780. And, under the facts, it

cannot be held to be recklessness or willfulness as a matter of law.

Appellant next argues that Sarvis should have substantially reduced his speed when his vision was first interfered with by the lights of the Barringer automobile, and that his failure to do so was a violation of Sections 46-361 and 46-363 of the Code. The first sentence of Section 46-361 reads as follows:

"No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing."

Section 46-363 reads, in part, as follows:

"The driver of every vehicle shall, consistent with the requirements of § 46-361, drive at an appropriate reduced speed * * * when any special hazard exists with respect to * * * other traffic * * *."

We think that it was a jury question whether, under all of the circumstances reflected by the evidence, Sarvis either inadvertently or consciously violated either of said Code Sections, or otherwise failed to use due care.

It is a well-settled rule in this state that every traveler on the highway, in the absence of any circumstance which would reasonably put one on notice to the contrary, is entitled to, assume, and to act upon the assumption, that others using it in common will observe the law and exercise reasonable care. Of course, this assumption, to which Sarvis was entitled, did not relieve or excuse him from exercising due care for his own safety, as well as that of others, but, in determining whether or not he was guilty of any failure to exercise such due care, his conduct has to be judged in the light of the assumption to which he was entitled. *Abeles v. Great Atlantic & Pacific Tea Co.*, 244 S. C. 508, 137 S. E. (2d) 604, and cases therein cited.

In the absence of any circumstance which would reasonably put Sarvis on notice to the contrary, he was entitled to assume that the Barringer automobile would not be illegally parked on the wrong side of the highway, and that the lights which he saw were those of a vehicle approaching him in its proper lane. Although the record discloses that the highway was straight for some distance east of the Barringer automobile, there is nothing in the record to indicate that Sarvis knew how far it was to the next curve. It is a matter of common knowledge, we think, that a driver, particularly at night, cannot tell on which side of the road a vehicle approaching around a curve is driving, until in near proximity thereto. We think it also a matter of common knowledge that drivers of ordinary prudence and care, in meeting vehicles approaching in their proper lanes at night, do not look directly at the approaching lights, but rather center their vision, just as Sarvis did, at least momentarily on the right-hand side of their respective lanes, to make sure that they are staying in their proper lanes. In the absence of some circumstance which would put a driver of ordinary prudence and caution reasonably on notice that it was unsafe to do so, we do not think that such conduct can be said to be either negligence or willfulness as a matter of law.

We conclude that there is no merit in the appeal and there was no error on the part of the trial judge in refusing to grant appellant's motion for directed verdicts in his favor.

Affirmed.

TAYLOR, C. J., and MOSS, LEWIS and BRAILSFORD, JJ., concur.