## 18706

Malcolm A. POOLE, Respondent, v. SOUTHERN RAILWAY COM-
PANY and Joyce Poole Barrier, of whom Southern Railway Com-
pany is, Appellant.

(157 S. E. (2d) 175)

*Messrs. Francis C. Jones,* of Lexington, *F. Dean Rainey,* of Greenville, *and John Gregg McMaster, and Robert J. Thomas,* of Columbia, *for Appellant,*

*Messrs. John H. Hydrick, Jr., and H. V. Sandifer,* of Lexington, *for Respondent,*

September 26, 1967.

Bussey, Justice.

This case arises out of a grade crossing accident which occurred in a rural area of Lexington County, and the only issue on appeal, necessary to be decided, is whether the defendant-appellant is entitled to judgment

in its favor on the ground that the record contains no evidence of actionable negligence on its part. It is elementary that in the decision of this issue the evidence, together with all inferences reasonably deducible therefrom, have to be viewed in the light most favorable to the respondent plaintiff. We, accordingly, review the record and state the facts in the light of such principle.

The plaintiff at the time of his injuries was a passenger in a car driven by his sister, Mrs. Barrier, who was named as a defendant in the action, but as to her there was arranged a covenant not to sue for a consideration of $2,500.00, and the trial proceeded against appellant alone. The verdict of the jury was as follows:

"We the jury find the defendant negligent by not providing sufficient lighting at the crossing in question and award the plaintiff a total sum of $5,000.00 of which $2,500.00 shall be deducted as settlement on behalf of plaintiff.

The car ran into the side of a moving freight train, somewhere between the engine and the caboose, at some time near 1 A.M. on the morning of June 15, 1963, the precise hour not being established by the evidence. The crossing was located not far from Pelion, South Carolina, and in that vicinity appellant's single track main line from Savannah to Columbia runs north and south, and is crossed at grade by a secondary road known as No. 74, which runs east and west. Approximately a mile to the west of the track State Highway No. 215 runs north and south, approximately parallel to the track. Road 74 commences at Highway No. 215, from a T intersection, and runs eastward over appellant's track.

Road 74 is straight and level from Highway 215 to the crossing, and in the daytime the crossing can be seen from Highway 215. The collision, of course, occurred in the nighttime, but the weather was clear and visibility conditions were good.

The crossing was posted with the usual cross-arm signs which were made of aluminum and reflectorized. In addition,

there were the usual Highway Department warning signs of a railroad crossing. Road 74 was an asphalt surfaced farm to market road which was in the process of being widened, and had been, in fact, widened to a width of twenty feet everywhere except at the crossing itself, where the road remained at the old width of fourteen and a half feet, leaving the road "pinched in" at the crossing. While such work was in progress the Highway Department had placed amber reflector-type barricades on either side of the road at the crossing to give warning of the narrowing of the road. There is no evidence of any obstruction or obstructions to view which have any bearing on the issues, and no evidence of any other automobile traffic in the area at the time.

Plaintiff and his sister lived in a nearby rural area and at the time his sister was taking him to visit his estranged wife. In doing so, she proceeded north on State Highway 215 and turned eastward on Road 74 to the point of collision. Plaintiff was asleep at the time of the collision. His sister, Mrs. Barrier, testified that she was driving eastward on Road 74 at a speed of 50 to 60 miles an hour, with dim lights, and that when she approached the track she put them on bright and saw the train moving over the crossing. She did not know what distance she was from the crossing at the moment, but by reference to a plat, fixed the distance at some one hundred sixty to seventy feet from the near rail of the track. All she saw on the track was boxcars in movement from south to north and she never saw the engine or caboose. She applied her brakes and kept them on until the collision. She and plaintiff remained in or about the car until about 5 A.M. before summoning help, although she sustained only minor injuries.

The members of the train crew were unaware of the collision until some days later, and by that time the train cars had been dispersed, so that appellant was unable to make any investigation as to which car in the train had been struck by the automobile. It was, however, established that train No. 156 from Savannah to Columbia was the

only northbound train which could have passed the crossing during the period of time involved. Such train consisted of three diesel units, 75 cars and a caboose, the train being approximately three-quarters of a mile long.

A highway patrolman, who investigated later that morning, found skid marks one hundred twenty-five feet in length leading to the point of impact, and the automobile, with the right side thereof demolished, some one hundred forty-seven feet to the left or north of the point of impact and next to the track.

Plaintiff offered no evidence as to the speed of the train. Since we have to view the evidence in the light most favorable to the plaintiff, we take the lowest speed, 30 miles per hour, testified to by any witness for the appellant, for the purpose of calculating the maximum amount of time that the moving train could have occupied the crossing. Simple calculation shows that at such rate of speed, the train being three-quarters of a mile in length, the moving train would have occupied the crossing a maximum of ninety seconds. Since Mrs. Barrier, at the rate of speed she testified to, would have taken approximately one minute to travel from Highway 215 to the crossing, and since she never saw the engine or its lights, it becomes obvious that, if she was looking ahead, the engine had already passed the crossing when she turned onto Road 74, and that the moving boxcar she collided with was near the rear of the train.

In submitting the case to the jury the trial judge, correctly we think, eliminated any issue of punitive damages; and ruled that there was no evidence of any statutory violation on the part of the appellant. As to its culpability, if any, he submitted to the jury only the issue of whether there was any negligence on its part in failing to give some additional warning, not required by statute, of the presence of the moving train on the crossing. Also submitted to the jury were the issues of contributory negligence on the part of the plaintiff and sole negligence on the part of Mrs. Barrier.

The issue before us is simply whether, under all of the circumstances reflected by the evidence, viewed in the light most favorable to the plaintiff, an inference can reasonably be drawn that there was a failure on the part of appellant to exercise due care in not giving some additional warning, not required by statute, of the presence of its moving train on the crossing, or, stated more simply, was there a delict in any common law duty owed by it to the traveling public?

Whether one's conduct is in the exercise of ordinary prudence and care or is negligent, of course, depends on all of the circumstances. Under the circumstances reflected by the record, viewed in the light most favorable to the plaintiff, we think that there was no evidence which would support a reasonable inference that the appellant was negligent. The record is devoid of any circumstance or condition tending to show that the particular crossing was unusually hazardous or dangerous. The crossing was in a rural area; the track was defendant's main line; the road was a secondary one and there is no evidence of heavy traffic thereon. The moving train, at most, occupied the crossing for a space of 90 seconds.

It is obvious that the primary and efficient cause of the collision, if not the sole proximate cause thereof, was the conduct of Mrs. Barrier in approaching the crossing, of which she was fully aware, without reducing her speed and while driving with dim lights. In the absence of anything which would reasonably put the appellant on notice to the contrary, it was entitled to presume that motorists using the highway would obey the law and exercise due care, and in determining whether it exercised due care in this instance, its conduct has to be judged in the light of the presumption to which it was entitled. *Beverly v. Sarvis,* 246 S. C. 470, 144 S. E. (2d) 220; *Abeles v. Great Atlantic & Pac. Tea Co.,* 244 S. C. 508, 137 S. E. (2d) 604.

Plaintiff argues, *inter alia,* that the exercise of due care required the appellant to either have this rural crossing lighted, or to equip the sides of its freight

cars with lights, reflectors, or luminous paint markings. The verdict of the jury would indicate that it agreed with such argument.

No case factually in point has apparently been decided by this court, and plaintiff cites no case in point from this or any other jurisdiction in support of the contention that the appellant was negligent in any particular. There are, however, numerous decisions from courts of other jurisdisctions which are in point, supporting our conclusion that there is in the instant case no evidence of any negligence on the part of appellant. The case of *Music v. New York C.R. Co.,* 2 Mich. App. 467, 140 N. W. (2d) 567, decided in 1966, is strikingly in point with the instant case on the facts. There the court said,

"The plaintiff does not claim that the crossing is unusually dangerous, but does claim that the railroad breached its common law duty in failing to equip the sides of its freight cars with lights, reflectors, or luminous paint markings. We have searched for one reported case holding that a railroad company has a common law duty to so equip its freight cars.

"The I. C. C. and the sub-committee of the United States Congress have studied the advisibility of recommending the installation of light, reflectors, or luminous paint markings on freight cars without making recommendations as to proposed changes in the regulations or the existing laws. Docket No. 33440 (322 ICC 1, 70), entitled: Prevention of rail-highway grade-crossing accidents involving railway trains and motor vehicles."

We quote the following from *Illinois Central Railroad Company v. Williams,* 242 Miss. 586, 135 So. (2d) 831,

"The facts bring into consideration the so-called occupied crossing doctrine and the peculiar or dangerous environment exception to it. A railroad has the right to occupy a crossing for its legitimate purposes, and, while so occupying it, the carrier is not required to maintain lights on its cars or to station a man with a lantern at the crossing to give warning

that it is obstructed by cars, unless the conditions and circumstances are such that the employees of the railroad know, or in the exercise of reasonable care and caution should have known, that a person driving upon the highway at a reasonable rate of speed in an automobile properly equipped with lights, and carefully operated, could not see, or might not be able to see, the cars in time to avoid a collision with them. *Gulf M. & N. R. R. Company v. Holifield,* 152 Miss. 674, 120 So. 750 (1929). To fall within the exception stated in Holifield, there must be 'some peculiar environment which renders the crossing unusually dangerous.' "

The rule as announced by the Mississippi court would appear to be in accord with the entire weight of authority in this country, as well as the rationale of our own decisions dealing with unusually dangerous crossing situations. See 44 Am. Jur. 742, Railroads, Sec. 502; annotation in 24 A. L. R. (2d) 1201; and *Carlson v. So. Pac. Co.,* 219 Or. 77, 346 P. (2d) 381.

Since the record contains no circumstances or fact showing any peculiar environment rendering the crossing an unusually dangerous one, the trial judge should have directed a verdict in favor of the appellant. The judgment of the lower court is, accordingly, reversed and the case remanded for entry of judgment in favor of the appellant, pursuant to Supreme Court Rule 27.

Reversed.

Moss, C.J., and LEWIS, BRAILSFORD and LITTLEJOHN, JJ., concur.