20153

Eliose T. TISDALE, Respondent, v. KERR McGEE CHEMICAL CORPORATION and McNair Seed Company, Appellants

(221 S. E. (2d) 531)

*Messrs. C. Dexter Powers,* of *Wright, Scott, Blackwell & Powers,* Florence, and *LaNue Floyd,* of Kingstree, *for Appellants,*

■

*Messrs. Allen C. Pate* and *George W. Keels,* of Florence, *for Respondent,*

January 22, 1976.

LITTLEJOHN, Justice:

This breach of warranty action was brought in the Williamsburg County Civil Court by Eloise Tisdale (plaintiff) against defendants, Kerr-McGee Chemical Corporation (Kerr-McGee) and McNair Seed Company (McNair), to recover actual damages of $8,091.75, allegedly suffered as a consequence of purchasing 140 bags of defective soybean seed from Kerr-McGee. Kerr-McGee, a retailer, had purchased them from McNair, a wholesaler.

Upon trial of the case, the jury rendered a verdict for plaintiff in the amount of $4,068.51. Defendants have appealed, alleging error by the trial judge in refusing their motions for nonsuit, directed verdict and judgment *n. o. v.*

We are of the opinion that the trial judge properly overruled the motions and affirm the verdict of the lower court. The sole issue before us is whether the evidence made issues of fact for the jury, or only questions of law for the judge.

Plaintiff alleged that the seed she purchased were defective in that they failed to germinate, as represented by defendants, requiring plaintiff to purchase other seed and replant, which planting produced a short crop.

The answers amounted to a general denial. In addition, the answers alleged misuse of the seed, that poor farming techniques were used, and that plaintiff's loss resulted from an Act of God. They specifically denied a breach of warranty.

The evidence discloses that McNair sold two lots of soybean seed to Kerr-McGee in 1970. In April of 1971, Kerr-McGee sold 100 fifty-pound bags of these seed to the plaintiff for planting. Her son, who operated her farm, planted them in May of 1971. By June, a "stand" of soybeans had not sprouted and come up in a normal fashion. It was the testimony of plaintiff's son that only about 10% of the seed had germinated.

Plaintiff bought 40 additional fifty-pound bags of seed from Kerr-McGee in June. She and her son both testified that they also bought seed from another source in June, which were used in replanting 120 acres that month. Defendants attempted to discredit plaintiff on this point, but it was established that a replanting took place and that, later that same crop year, plaintiff returned 44 bags, which she had purchased from Kerr-McGee, as unusable.

The replanting yielded only 20 bushels instead of 40 bushels per acre, which plaintiff claimed was a normal yield.

Plaintiff's son described his method of planting the seed. He testified that he planted about fifty pounds to the acre, and that other farmers in his area had a good stand of soybeans in the same month of June.

A neighbor, with 30 years of farming experience, testified that he saw plaintiff's field and thought it had been properly planted, and that the land did not have a problem with excess water because of its elevation. He examined the seed after the first planting and observed that they had rotted in the ground. He also testified that he planted the same type of seed that year, using fifty-pounds per acre, and had no problem getting a good stand.

A county agent testified for plaintiff that he had a test made of seed submitted to him by plaintiff in 1972 (some 19 months after the seed were produced) which tested out as having a germination rate of 12%. This seed, plaintiff claims, she purchased from Kerr-McGee in April or June of 1971. By state law, producers are required to list on a

tag the germination rate of seed they are selling, which must be at least 75% for soybean. The seed purchased by plaintiff were tagged 80%.

Both the county agent and an expert who testified for defendants, stated that soybean seed, being very oily, deteriorate rapidly and they would not think it unusual for seed with a high germination rate in 1971 to have a 12% rate in September 1972, especially after being stored through two summers. Further, a defense witness testified that after plaintiff complained of the failure to get a stand in June 1971, he had a sample of the purchased seed tested that July and it tested out as having a germination rate of 90%.

The county agent was allowed to testify for defendants that records kept by the crop reporting service in Columbia showed the average crop yield in Williamsburg County area to be 21.2 bushels per acre in 1971.

Defendants' contention on this appeal is that the trial judge should have granted judgment to the defendants as a matter of law. It is submitted that there was no evidence for the jury to weigh. In the appeal, we are concerned not with the weight of the evidence, but only with the question of whether there is any evidence reasonably supporting the contentions of the plaintiff. The evidence, which we have summarized above, convinces us that the trial judge properly submitted the issues to the jury. More than one reasonable inference was created by the evidence. Therefore, the trial judge was required to submit the issues to the jury. *Mahaffey v. Ahl,* 264 S. C. 241, 214 S. E. (2d) 119 (1975).

Even if the defendants' evidence is taken as true, there is still evidence submitted by the plaintiff, which, if believed, warrants the conclusion that there was a breach of warranty.

Whatever doubt had been cast on plaintiff's evidence by the testimony of defendants' witnesses, was a matter for the jury's determination. The credibility of

the testimony of witnesses is, of course, a function of the jury, not the court, *Edwards v. Great American Ins. Co.*, 234 S. C. 404, 108 S. E. (2d) 582 (1959), and it is the jury that decides what weight is to be given. *Carolina Power & Light Co. v. Gasque*, 258 S. C. 1, 186 S. E. (2d) 813 (1972).

Accordingly, the verdict of the court below is
Affirmed.

LEWIS, C. J., NESS and GREGORY, JJ., and JOSEPH R. Moss, Acting Associate Justice, concur.