0139

Joe Ann DOE, Respondent, v. Albert E. ASBURY and Ryder Truck Lines, Inc., Appellants.

(314 S. E. (2d) 849)

Court of Appeals

W. *Ray Berry*, Columbia, *for appellants.*

Gary D. Brown, Ridgeland, *for respondent.*

April 2, 1984.

SANDERS, Chief Judge:

This is a suit arising out of a collision between an automobile driven by respondent Joe Ann Doe and a tractor trailer truck driven by appellant Asbury as the employee of appellant Ryder. The jury returned a verdict in favor of Doe. We affirm.

I

Asbury and Ryder first argue there was insufficient "creditable testimony as to the negligence and/or recklessness of appellant driver to warrant submitting the case to the jury." In an action at law, the jurisdiction of this Court extends only to the correction of errors of law. A factual finding of the jury will not be disturbed unless a review of the record discloses there is no evidence which reasonably supports the jury's findings. *Townes Associates, Ltd. v. City of Greenville*, 266 S. C. 81, 221 S. E. (2d) 773 (1976); *Stevens v. Sun Publishing Company*, 270 S. C. 65, 240 S. E. (2d) 812, cert. denied 436 U. S. 945, 98 S. Ct. 2847, 56 L. Ed. (2d) 786 (1978). In an appeal of this nature, the weight of the evidence presented at trial is not at issue. Instead, the question is simply whether there is any evidence in the record which

would reasonably support the contentions of the party prevailing at trial. *Tisdale v. Kerr McGee Chemical Corporation,* 266 S. C. 64, 221 S. E. (2d) 531 (1976); *Willis v. Floyd Brace Co., Inc.,* 309 S. E. (2d) 295 (S. C. App. 1983). Judging the credibility of the testimony of witnesses is a function of the jury, not the court, as is the weight to be given to such testimony. *Tisdale; Davenport by his G/A/L, et al. v. Walker,* S. C. App. 313 S. E. (2d) 354 (1984).

It is therefore our task simply to review the record of the trial court and determine whether there was any evidence supporting the jury verdict. *Willis.* We find the evidence as follows:

This accident occurred on U. S. Highway 17 near Hardeeville, South Carolina. Highway 17 is a four lane highway, running generally north and south, and divided by a median provided for making left turns. Doe testified she was stopped in the median, headed South and preparing to make a left turn, when she saw the Ryder truck coming toward her. She described the truck as "wobbling" and "going in and out one lane and coming on the median." She said the truck then collided with the front left of her car, pushing it straight back on the median.

Asbury testified he was proceeding north on Highway 17 in the lane closest to the median when Doe suddenly turned left in front of him causing his truck to collide with the front left of her car. He denied driving into the median. Asbury further testified there were skid marks from his truck and "gouges" in the north bound lane of the highway in which he was traveling but no skid marks from his truck going into the median. According to Asbury, his truck traveled about ten feet after the impact and came to rest on top of the Doe car and had "it mashed down to the pavement," with the front of the car in his lane of travel.

The investigating Hardeeville policeman testified he received a call about the accident when he was two to three blocks away and arrived on the scene within "no more than five seconds." His testimony tended to contradict, in part, the previous testimony of both Doe and Asbury. He said he found the Doe car headed south at an angle, pushed back 19 feet in the median, with damage to its left front side. He described the Ryder truck as stopped in the northbound outer lane of the

highway away from the median. He further testified there was debris in the inner north-bound lane "85 feet 5 inches" from where the truck was stopped and tire tracks on the wet pavement from the trailer of the truck back to and before the debris, but no tracks from the truck into the median.

In our opinion, the testimony of Doe was sufficient to warrant submitting this case to the jury. The jury chose to accept her testimony over that of Asbury. The jury also chose to disregard the testimony of the policeman as to debris and tire marks which tended to support Asbury's version of how the accident occurred. We are not at liberty to substitute our view of the evidence for the verdict of the jury. *Gurley, et al. v. United Services Automobile Association,* 309 S. E. (2d) 11 (S. C. App. 1983).

Asbury and Ryder argue the location of the tire marks and debris are "physical facts establishing that the truck did not cross over into the median," and the testimony of Doe should be disregarded as "inherently or physically impossible or contrary to physical facts and common knowledge and experience." In support of their position, they cite *Still v. Hampton and Branchville Railroad,* 258 S. C. 416 189 S. E. (2d) 15 (1972).

We have examined this case and find it is distinguishable on its facts. It also contains dicta supporting a result opposite to that urged by Asbury and Ryder. In *Still,* the plaintiff ran his car into the 32nd car of a 40-car train crossing the highway at night. His suit against the railroad was based exclusively on its failure to give reasonable warning by lights, flagman or otherwise, that the highway was blocked by its train. The duty of a railroad to so warn arises only where conditions and circumstances are such that the railroad knows, or should know, that a person driving carefully, at a reasonable speed with proper lights cannot, or might not, be able to see the cars of the train in time to avoid a collision. *Poole v. Southern Railway Company,* 250 S. C. 213, 157 S. E. (2d) 175 (1967). Still testified he did not see the train in time to stop, although he was driving between 50 and 55 miles per hour with his lights on high beam and had unobstructed visibility for 400 feet ahead. In sustaining a directed verdict for the railroad, the court said it "disregarded" testimony of a witness that due to the slope of the highway a train on the crossing is not illuminated by the headlights of a car until the vehicle is within 90 to .

100 feet of the track. The court characterized this testimony as "astonishing" and observed that it is "of common knowledge that gentle to moderate grades, such as those at this crossing, have no significant effect on the visibility provided by automobile headlights on high beam." However, the court went on to hold:

> But even if the testimony of this witness involved a question of credibility for the jury, there was no error in directing a verdict for the defendant company. Under the rule adduced, the burden on a railway company to take extraordinary precautions in an occupied crossing situation does not arise until it knows or by the exercise of due care should have known of the unusual hazard existing at the crossing. Here, there is a complete absence of evidence that the company knew, or should have known, that on the approach to this crossing from the south, automobile headlights would be incapable of performing the function for which they are designed. *Still* at 428, 189 S. E. (2d) at 21.

Thus, the fact that the court said it "disregarded" the testimony of the witness was unnecessary to its ultimate holding. Furthermore, testimony of Doe which Asbury and Ryder ask us to "disregard" here is very different from the testimony of the witness in *Still*. There, the court simply took judicial notice of facts within common knowledge (*i.e.*, that gentle to moderate grades have no significant effect on visibility provided by automobile headlights on high beam). Here the so called "physical facts" as to the debris and tire tracks depend, for their very existence, on the credibility of the witnesses whose testimony described them; testimony the jury rejected.

Moreover, the court in *Still* further addressed another factual conflict similar to that in the instant case and reached a result opposite to that which Asbury and Ryder urge here. In addition to suing the railroad, the plaintiff in *Still* also sued the South Carolina Highway Department, alleging its failure to provide a certain sign warning of the railroad crossing. The absence of this sign, as required by the Highway Department manual, was testified to in detail by the same witness, based on his observation of the scene shortly after the accident

occurred. His testimony was not only contrary to the overwhelming weight of other evidence but was also directly refuted by an unimpeached photograph of the scene taken before the witness arrived. Nevertheless, the court said the credibility of his testimony was a jury question. (This statement by the court is also *dicta* because it went on to sustain a directed verdict for the Highway Department based on a holding that the plaintiff had failed to prove himself free of contributory negligence as required by statute.)

## II

Asbury and Ryder next argue the trial judge erred in admitting, over their objection, testimony by the policeman as to a statement made to him by Doe after he arrived at the scene. He testified he asked her what happened as she was being administered first aid in a motel across the highway from the accident, and she told him she "was parked in the median and the truck hit her in the median."

The policeman also testified, apparently without objection, as to what Asbury told him as the scene about his version of how the accident happened.

No hard and fast rule can be laid down as to the admissibility of evidence under the *res gestae* exception. Instead, each case must be decided on its own facts, and admissibility is largely left to the discretion of the trial judge. *Marks v. I. M. Pearlstine & Sons*, 203 S. C. 318, 26 S. E. (2d) 835 (1943). To qualify, a statement must be substantially contemporaneous with the litigated transaction and be the instinctive, spontaneous utterance of the mind while under the active, immediate influences of the transaction; the circumstances precluding the idea of reflection or design to make false or self-serving statements. *Addyman v. Specialties of Greenville, Inc.*, 273 S. C. 342, 257 S. E. (2d) 149 (1979). However, statements which are overwise admissible as part of the *res gestae* are not rendered inadmissible because they are self-serving. *Bennette v. Hader*, 337 Mo. 977, 87 S. W. (2d) 413 (1935); *Mallory v. Mallory*, 272 Ala. 464, 131 So. (2d) 703 (1961). Rather, the self-serving character of a statement may be a factor to consider in determining spontaneity. *Bennett v. Bennett*, 92 N. H. 379, 31 A. (2d) 374 (1943).

The proponent of admission has the burden of establishing the required conditions. The ruling of the trial judge will not be disturbed on appeal unless it clearly appears from undisputed circumstances in evidence that the evidence should have been admitted or rejected. *Marshall v. Thomason,* 241 S. C. 84, 127 S. E. (2d) 177 (1962); *Cf. Gentry v. Watkins-Carolina Trucking Company,* 249 S. C. 316, 154 S. E. (2d) 112 (1967) (Citing *Marshall,* the court said in *dicta:* "The admissibility, as part of the *res gestae,* of statements made by a party or his agent following an accident is a matter addressed to the discretion of the trial judge . . .") For a more complete discussion of the *res gestae* exception, *see Bain, Exr. v. Self Memorial Hospital,* S. C. App., 314 S. E. (2d) 603 (1984.)

The policeman testified he was only two to three blocks from the accident when he was called and arrived on the scene within five seconds thereafter. He next testified he observed the scene and then went across the highway to the motel where Doe made the statement to him while she was being administered first aid.

In our opinion, this evidence is sufficient to support the finding of the trial judge that the statement was both sufficiently contemporaneous with the accident and instinctively and spontaneously made while Doe was under its immediate influence. Accordingly, we find no abuse of discretion.

For these reasons, judgment is

Affirmed.

SHAW and GOOLSBY, JJ., concur.