# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Jeane Whitfield, Appellant,

v.

Dennis K. Schimpf, and Sweetgrass Plastic Surgery, LLC, Respondents.

Appellate Case No. 2023-000245

———

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

———

Appeal from Charleston County
Bentley Price, Circuit Court Judge

———

Opinion No. 28250
Heard October 2, 2024 – Filed January 8, 2025

———

## REVERSED AND REMANDED

———

Jesse Sanchez, of The Law Office of Jesse Sanchez; Daniel Scott Slotchiver and Andrew Joseph McCumber, of Slotchiver & Slotchiver, LLP; Brent Souther Halversen, of Halversen & Halversen, LLC, all of Mount Pleasant, all for Petitioner.

Todd W. Smyth and Allie Aleece Maples, of Smyth Whitley, LLC, of Charleston, for Respondents.

———

**JUSTICE FEW:** Jeane Whitfield brought this medical malpractice action against Dr. Dennis Schimpf and Sweetgrass Plastic Surgery, LLC—Schimpf's medical practice—alleging Schimpf was negligent in performing breast augmentation-mastopexy surgery[1] on Whitfield and he and other Sweetgrass employees were negligent in rendering post-operative care. The jury returned a verdict in favor of Schimpf and Sweetgrass, and the court of appeals affirmed. We granted Whitfield's petition for a writ of certiorari to review the court of appeals' decision affirming the trial court on two evidentiary rulings: (1) excluding evidence of bias Whitfield offered to impeach the testimony of Sweetgrass' office manager—Vicky Tolbert—about her sexual relationship with Schimpf and his wife, the salary she was paid by Sweetgrass, and free cosmetic surgical procedures she received from Schimpf; and (2) admitting testimony from Schimpf's expert witnesses based in part on their Rule 35, SCRCP, examinations of Whitfield. We find the court of appeals was correct to affirm on the second issue but erred in affirming the exclusion of the evidence of bias. We reverse and remand for a new trial.

## I.     Facts and Procedural History

Whitfield had breast augmentation surgery in 2009. Schimpf did not perform this original augmentation surgery. In 2013, Whitfield began experiencing discomfort under one of her breasts and scheduled a consultation with Schimpf at Sweetgrass. Schimpf recommended augmentation-mastopexy surgery to address "encapsulation," which is heavy scar tissue surrounding a breast implant.

Schimpf operated on Whitfield on June 6, 2014. Schimpf removed Whitfield's breast implants and the scar tissue surrounding them, and then inserted smaller implants in their place. Schimpf also performed unrelated cosmetic procedures on her eyes, neck, and stomach at the same time as the augmentation-mastopexy procedure.

During a normal post-operative visit on June 10, Whitfield expressed concern with the way the sutured incision around the areola on her right breast was healing. She

---

[1] An "augmentation" is "plastic surgery to enlarge the breast, often by insertion of an implant." *Augmentation m.*, STEDMAN'S MEDICAL DICTIONARY 1149 (28th ed. 2006). A "mastopexy" is "[p]lastic surgery to elevate and reshape a ptotic breast; may or may not involve prosthetic augmentation." *Mastopexy*, STEDMAN'S MEDICAL DICTIONARY, *supra*, at 1162. Whitfield had both an augmentation and mastopexy, where Schimpf performed a breast lift and removed Whitfield's existing implants and replaced them.

testified at trial she was told by Sweetgrass employees on June 10 that what she observed was part of the "natural progression of healing," but the wound continued to worsen after the post-operative visit.

On June 20, Whitfield experienced severe chest pain and called an ambulance to transport her to Roper Hospital. The physician at the hospital ruled out possible cardiac issues, discharged Whitfield from the hospital, and told her to contact her plastic surgeon if the pain persisted.

On June 30, Whitfield requested an appointment to address her continuing pain. Schimpf saw her on July 1. During that appointment, Schimpf gave Whitfield two stitches to repair "wound dehiscence"[2] on her right breast and prescribed her antibiotics. Whitfield testified she called Schimpf's office multiple times after that appointment to complain of pain, but she was not given any further follow-up care. Whitfield then did an internet search for plastic surgeons to find another doctor to help her with her pain. She found Dr. Ram Kalus, who would later testify as one of her expert witnesses.

Kalus saw Whitfield on July 10 and determined the wound "was open." Kalus testified the "wound separation" was about two-and-a-half centimeters on the right breast and about one centimeter on the left breast. Kalus also testified the exposed tissue beneath the wound was undergoing "fat necrosis."[3] Kalus referred her back to Schimpf for further treatment.

On July 11, Whitfield returned to Sweetgrass and was placed in an examination room with Schimpf and Vicky Tolbert—the office manager for Sweetgrass. Whitfield testified at trial that Schimpf was very angry she had gone to see another doctor and "let someone else see" the wound. She testified Schimpf opened up her wound and then "proceed[ed] to stitch [her] up with no anesthetic, no little cat needle, no cream

---

[2] "Dehiscence" is defined as "[a] bursting open, splitting, or gaping along natural or sutured lines." *Dehiscence*, STEDMAN'S MEDICAL DICTIONARY, *supra* note 1, at 505. "Wound dehiscence" is the "disruption of apposed surfaces of a wound." *Wound d.*, STEDMAN'S MEDICAL DICTIONARY, *supra* note 1, at 505.

[3] "Fat necrosis" is "the death of adipose tissue, characterized by the formation of small (1-4 mm), dull, chalky, gray or white foci; these represent small quantities of calcium soaps formed in the affected tissue when fat is hydrolyzed into glycerol and fatty acids." *Fat n.*, STEDMAN'S MEDICAL DICTIONARY, *supra* note 1, at 1285.

or anything, no spray." She stated that when Schimpf finished he threw his tray into the sink and told Whitfield to "get out of here."

Whitfield testified that on July 13, 2014, while she was in the shower, her right breast "blew open all the way through" and blood poured out from the wound. Whitfield called Kalus who told her to go to the hospital immediately. Kalus testified he treated her at the hospital and the wound had worsened since he had seen her last. Kalus performed surgery on her the next day and removed her right implant to allow him to close the wound.

In March 2015, Kalus performed a second surgery at Whitfield's request to remove the left implant. He also removed 490 grams of tissue from her left side. Kalus later performed a fat grafting surgery on Whitfield to address the asymmetry from the tissue removal.

On May 30, 2017, Whitfield filed this medical malpractice lawsuit against Schimpf and Sweetgrass in Charleston County. The complaint alleged Schimpf was negligent because there was "too much tension placed surgically on the incision which led to inadequate blood flow, ischemia, and dehiscence of the wound margins, fat necrosis, and ultimately infection of the right breast." The complaint also alleged Schimpf and Sweetgrass were negligent in failing to provide adequate post-operative care to Whitfield.

After a five-day trial, the jury returned a verdict in favor of Schimpf and Sweetgrass, finding on a special verdict form that Whitfield did not "prove by a greater weight or preponderance of the evidence that the Defendants deviated from the standard of care." Whitfield appealed, and the court of appeals affirmed in an unpublished opinion under Rule 220(b) of the South Carolina Appellate Court Rules. *Whitfield v. Schimpf*, Op. No. 2022-UP-417 (S.C. Ct. App. filed Nov. 23, 2022). We granted Whitfield's petition for a writ of certiorari to review the court of appeals' decision.

## II. Admissibility of Evidence of Tolbert's Bias

Whitfield argues the trial court erred in excluding three categories of evidence she offered to show bias on the part of Vicky Tolbert: (1) Tolbert's sexual relationship with Schimpf and his wife, (2) her salary at Sweetgrass, and (3) the free cosmetic procedures she received from Schimpf.

Before trial, Whitfield's attorney took Tolbert's deposition. Tolbert testified she had been in an on-again, off-again sexual relationship with Schimpf and his wife for the

past nine years. She stated the last time they engaged in sexual relations was one week before the deposition. As an employee of Sweetgrass, Tolbert received a salary for her work. Tolbert testified she also received free plastic surgery procedures from Schimpf, including a breast augmentation, hernia repair, liposuction, fillers, Botox, and laser eye treatments.[4]

Schimpf filed a pretrial motion seeking to exclude this evidence. Schimpf argued the evidence should be excluded under Rules 401, 402, 403, 404, and 608(c), SCRE. The trial court heard the motion on the morning before trial, and stated, "Well, under Rule 403, I find it to be more prejudicial than probative." However, the court declined to actually rule on the motion until Tolbert testified.

During trial, Whitfield called Tolbert as an adverse witness in her case-in-chief. Schimpf objected to a question Whitfield asked Tolbert about the amount of her salary at Sweetgrass. The trial court excused the jury and heard arguments about that objection, evidence of her sexual relationship with Schimpf and his wife, and evidence she received free medical procedures from Sweetgrass. Whitfield argued "the evidence of their relationship, how much Dr. Schimpf is compensating her financially, and also the evidence that we adduced from the depositions," referring to the evidence of the sexual relationship, "is directly relevant to her credibility and her bias as a witness."

For reasons not explained, the trial court then analyzed the admissibility of the evidence under Rule 608(a), SCRE—the subsection of Rule 608 dealing with attacking credibility with evidence of the witness's character for untruthfulness. The trial court concluded as to Rule 608(a), "I just don't think we have that here," and explained, "I don't think that she's testified to anything contrary than she has in her deposition." The trial court also stated, "I just don't see the probative value outweighing the prejudicial effect of it, of her testifying as to the relationship that she may have with the defendant." The trial court concluded the testimony regarding Tolbert's relationship with Schimpf and his wife, her salary, and the free procedures she received was inadmissible and stated, "I don't think she's biased, in my opinion at this point in time . . . . I don't think anything has been elicited as to the fact that she's been untruthful in any way."

The court of appeals affirmed the trial court's decision to exclude the evidence of Tolbert's bias without discussion, citing Rule 103(a)(2), SCRE, and caselaw

---

[4] Tolbert clarified the free procedures were provided to all employees at Sweetgrass.

requiring a proffer of testimony to preserve an error arising from a trial court's exclusion of evidence. *Whitfield*, Op. No. 2022-UP-417, at 1.

We first address issue preservation. We then address whether the trial court erred in excluding the testimony under the Rules actually applicable to the question: Rules 401 and 402, 608(c), and 403, SCRE. Finally, we address whether any error requires reversal and a new trial.

### a.    Issue Preservation

Whitfield argues the court of appeals erred in determining she was required to proffer Tolbert's testimony. We agree. Rule 103(a)(2), SCRE, provides:

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . [i]n case the ruling is one excluding evidence, the substance of the evidence and the specific evidentiary basis supporting admission were made known to the court by offer or were apparent from the context.

Here, the parties met with the trial court in chambers before the pretrial hearing and discussed this evidence of bias. Although that meeting was not on the record, from the arguments in the pretrial hearing and during Tolbert's testimony, it is clear the trial court was aware that "the substance of the evidence" Whitfield was offering included (1) the sexual relationship between Schimpf and Tolbert, (2) Tolbert's salary at Sweetgrass, and (3) the free medical procedures Schimpf performed on Tolbert. As made clear by the plain language of Rule 103(a)(2), a proffer of specific questions and answers is not required if "the substance of the evidence and the specific evidentiary basis supporting admission were made known to the court." There certainly are instances in which an actual proffer of testimony is necessary to adequately convey to the trial court "the substance of the evidence." In this case, however, having informed the trial court of these three items of evidence, there is nothing an actual proffer of testimony would have added to the trial court's understanding of whether the evidence was relevant and admissible.[5]   Thus, no

---

[5] In addition, Whitfield filed Tolbert's deposition transcript in the record during the pretrial hearing on the morning of trial. We do not rely on this filing, however, as Whitfield did not make a specific reference to the trial court at that time as to what the testimony was regarding the sexual relationship, nor did she later ask the trial court to review the important portions of the deposition.

specific proffer of testimony was required and the court of appeals erred in determining the issue was unpreserved.

### b. Admissibility

The central premise of the law of evidence is, "All relevant evidence is admissible . . . ." Rule 402, SCRE; *State v. Jenkins*, 436 S.C. 362, 391, 872 S.E.2d 620, 635 (2022). "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, SCRE. "Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *State v. Pipkin*, 359 S.C. 322, 327, 597 S.E.2d 831, 833 (Ct. App. 2004) (quoting *United States v. Abel*, 469 U.S. 45, 52, 105 S. Ct. 465, 469, 83 L. Ed. 2d 450, 457 (1984)).

Tolbert's testimony about her sexual relationship with Schimpf, the compensation she received from him, and the complementary cosmetic procedures he performed on her made the existence of Tolbert's bias towards Schimpf more probable. While this evidence has no direct bearing on the medical care or treatment Whitfield received from Sweetgrass, it is relevant for the purpose of assessing Tolbert's credibility. Thus, the proposed testimony was relevant under Rule 401 and admissible under Rule 402.

In addition, Rule 608(c) provides, "Bias, prejudice or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by evidence otherwise adduced." Under Rule 608(c), "anything having a legitimate tendency to throw light on the accuracy, truthfulness, and sincerity of a witness may be shown and considered in determining the credit to be accorded his testimony." *State v. Sims*, 348 S.C. 16, 25, 558 S.E.2d 518, 523 (2002) (internal quotation marks omitted) (quoting *State v. Jones*, 343 S.C. 562, 570, 541 S.E.2d 813, 817 (2001)). "A witness' romantic relationship with a party is a source of potential bias of which the jury should be aware in order to fully evaluate the witness' testimony." *State v. Starnes*, 340 S.C. 312, 325, 531 S.E.2d 907, 915 (2000).

Here, each of the three potential sources of Tolbert's bias in favor of Schimpf was clearly relevant under Rule 401 and admissible under Rules 402 and 608(c). The question then becomes whether the testimony could still have been excluded under

some other rule. *See* Rule 402, SCRE ("All relevant evidence is admissible, *except as otherwise provided* by . . . these rules . . . ." (emphasis added)); *Jenkins*, 436 S.C. at 392, 872 S.E.2d at 636 ("When evidence is found relevant . . . the next question is whether any rule of evidence or provision of law operates to exclude the evidence."). The trial court began its analysis of whether to exclude the evidence by considering Rule 608(a), SCRE. This is perplexing because Rule 608(a) permits the use of opinion or reputation evidence as to a witness's character for truthfulness or untruthfulness to attack or support the credibility of the witness,[6] but the proposed testimony in this case did not involve reputation or opinion evidence, nor is it evidence of Tolbert's character for truthfulness or untruthfulness. Thus, the trial court erred by analyzing the question under Rule 608(a).

The trial court also relied on Rule 403, SCRE, stating initially at the pretrial hearing the evidence was "more prejudicial than probative," and then during trial finding, "I just don't see the probative value outweighing the prejudicial effect of . . . her testifying as to the relationship that she may have with the defendant." These two statements are based on a fundamental misunderstanding of the law set forth in Rule 403, and this misunderstanding undoubtedly led the trial court to make its erroneous ruling.

First, Rule 403 addresses only "unfair prejudice," which is not the same as whether the evidence has a legitimate "prejudicial effect." *See State v. Jones*, 440 S.C. 214, 245, 891 S.E.2d 347, 363 (2023) (differentiating between prejudice and "unfair" prejudice). To conduct a proper Rule 403 analysis, a trial court must distinguish "unfair" prejudice from the legitimate impact all evidence has on the outcome of a case. As our court of appeals recognized years ago, "Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an

---

[6] Rule 608(a), SCRE, provides:

> The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

improper basis." *State v. Gilchrist*, 329 S.C. 621, 630, 496 S.E.2d 424, 429 (Ct. App. 1998) (quoting *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993); *see also State v. Gray*, 408 S.C. 601, 616, 759 S.E.2d 160, 168 (Ct. App. 2014) ("All evidence is meant to be prejudicial; it is only *unfair* prejudice which must be scrutinized under Rule 403." (cleaned up) (quoting *Gilchrist*, 329 S.C. at 630, 496 S.E.2d at 429)). Evidence poses a danger of unfair prejudice when it has a "tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." *State v. Holder*, 382 S.C. 278, 290, 676 S.E.2d 690, 697 (2009) (quoting *State v. Jackson*, 364 S.C. 329, 334, 613 S.E.2d 374, 376 (2005)). Second, Rule 403 itself clearly states "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Rule 403, SCRE. Here, the trial court inexplicably reversed the Rule 403 standard and considered whether the probative value exceeded the prejudice.

The trial court's failure to apply the correct legal standard in these two respects was itself an abuse of discretion. *See State v. Wallace*, 440 S.C. 537, 543, 892 S.E.2d 310, 313 (2023) ("[T]he trial court—when ruling on the admission or exclusion of evidence—must . . . apply the correct law." (first citing *State v. Jones*, 423 S.C. 631, 636, 817 S.E.2d 268, 270 (2018); and then citing *State v. King*, 422 S.C. 47, 68-69, 810 S.E.2d 18, 29 (2017))).

In addition, the trial court misunderstood its role in evaluating the admissibility of evidence. The trial court stated, "I don't think she's biased, in my opinion at this point in time," and "I don't think anything has been elicited as to the fact that she's been untruthful in any way." Our courts have consistently held that witness credibility is a question exclusively for the jury and a trial judge's personal view of whether a witness is telling the truth plays absolutely no part in the analysis of admissibility. *See Tisdale v. Kerr McGee Chem. Corp.*, 266 S.C. 64, 67-68, 221 S.E.2d 531, 533 (1976) ("The credibility of the testimony of witnesses is, of course, a function of the jury, not the court . . . and it is the jury that decides what weight is to be given." (citations omitted)); *State v. Kromah*, 401 S.C. 340, 358, 737 S.E.2d 490, 499-500 (2013) ("Our courts have previously held that the assessment of witness credibility is within the exclusive province of the jury . . . ." (cleaned up) (quoting *State v. McKerley*, 397 S.C. 461, 464, 725 S.E.2d 139, 141 (Ct. App. 2012))). A trial court may not exclude evidence of bias because the court believes the witness is not biased, nor evidence of credibility because it thinks the witness has not been untruthful; that is for the jury to determine. For all these reasons, we hold the trial court abused its discretion in excluding the evidence.

Schimpf nevertheless argues the testimony would have been excluded even under a proper Rule 403 analysis because it was unfairly prejudicial. *See State v. Fuller*, 425 S.C. 468, 478, 822 S.E.2d 910, 915 (Ct. App. 2019) (holding that even if evidence of bias was admissible under Rule 608(c), it was within the trial court's discretion to exclude the evidence under Rule 403). We disagree the evidence should have been excluded as to each category of evidence except the sexual relationship with Schimpf's wife.

The evidence has considerable probative value in demonstrating Tolbert's bias in favor of Schimpf. Tolbert's long-term sexual relationship with Schimpf made her more likely to provide favorable testimony on his behalf. The facts that Schimpf was giving Tolbert free cosmetic procedures and she was being compensated as an employee of Sweetgrass further increased the likelihood she would testify positively about both Schimpf and Sweetgrass. We find the probative value of this evidence is high. *See Starnes*, 340 S.C. at 325, 531 S.E.2d at 915.

Turning to unfair prejudice, we find no unfair prejudice in admitting evidence of Tolbert's salary and that she received free medical procedures as part of her compensation package. This information does not carry even the slightest risk of eliciting an emotional response that could unfairly divert the jury's attention away from the facts of the case and the applicable law. Unquestionably, therefore, the exclusion of this evidence was error.

As to Tolbert's sexual relationship with Schimpf, we do see some danger of unfair prejudice in the fear the information about Schimpf's extramarital relationship with a staff member would paint Schimpf's character in a negative light and distract the jury from the central issue in the case—whether Schimpf was negligent in rendering medical care. We agree with Schimpf this information had the potential to overshadow the facts relevant to the central issue—medical negligence—and unfairly influence the jury to make its decision on some basis other than whether Schimpf breached the applicable standard of medical care. Given the high probative value of a longstanding romantic relationship with the defendant as a source of potential bias, however, we find the probative value was not *substantially* outweighed by the danger of unfair prejudice. Thus, it was error to exclude the evidence of Tolbert's sexual relationship with Schimpf under Rule 403.

Our analysis differs, however, as to evidence of Tolbert's sexual relationship with Schimpf's wife. First, the record before us does not indicate that the evidence of Tolbert's relationship with Schimpf's wife adds any additional probative value beyond the fact Tolbert was in a sexual relationship with Schimpf himself. As far

as we can tell, therefore, the probative value of this evidence in this case is zero. As to unfair prejudice, the fact Schimpf was involved in a three-way relationship with both his office manager and his wife is a bizarre circumstance that poses a substantially increased risk the jury may be distracted from the central issues in the case. The lack of any additional probative value in the evidence balanced against the significant danger the jury will judge Schimpf by his unconventional and inappropriate sexual conduct rather than by whether he breached the applicable standard of care causes us to agree with the trial court that evidence of Tolbert's sexual relationship with Schimpf's wife should have been excluded.

### c.　　Reversible Error

Because Tolbert's testimony did not relate directly to the central issue in the case—medical negligence—we turn to the question of whether the trial court's error in excluding evidence of her bias requires that we reverse and grant Whitfield a new trial. As we recently stated, "Some errors—when considered in the context of the facts of a particular case—are so insignificant and inconsequential they do not require reversal . . . ." *State v. Reyes*, 432 S.C. 394, 405-06, 853 S.E.2d 334, 340 (2020). Rather, "to warrant reversal based on the admission or exclusion of evidence, the appealing party must show both the error of the ruling and prejudice." *Fields v. J. Haynes Waters Builders, Inc.*, 376 S.C. 545, 557, 658 S.E.2d 80, 86 (2008) (citing *Fields v. Reg. Med. Ctr. Orangeburg*, 363 S.C. 19, 26, 609 S.E.2d 506, 509 (2005), *overruled on other grounds by Wallace*, 440 S.C. at 542, 892 S.E.2d at 312). "Prejudice is a reasonable probability that the jury's verdict was influenced by the challenged evidence or the lack thereof." *Id.*

Whitfield argues she was prejudiced by the trial court's error because "she had no other means by which to establish [Tolbert's] interest, bias, or partiality towards Dr. Schimpf at trial." Specifically, Whitfield argues she was prejudiced by not being permitted to establish Tolbert's bias because Tolbert gave different testimony than Whitfield regarding Schimpf's hostile behavior during the July 11 post-operative procedure.

As described above, Whitfield testified that, during the July 11 visit during which Schimpf cleaned her wound and placed sutures in the wound in an attempt to close it, Schimpf was angry that Whitfield had shown her wound to another surgeon and he slammed his tray in the sink. Schimpf's anger gave Whitfield the impression Schimpf was embarrassed that another surgeon had seen his allegedly sloppy work. When Tolbert was asked whether Schimpf was angry during Whitfield's visit, however, she testified, "No. He would never be angry." When Tolbert was asked

whether Schimpf threw his tray in the sink she testified, "No. Dr. Schimpf would never do that."

Dr. Michael Rosenberg—Whitfield's plastic surgery expert—testified that Schimpf deviated from the standard of care during the July 11 procedure by failing to take Whitfield into surgery to remove the implant. Rosenberg explained that by instead electing to place additional sutures in the wound, Schimpf increased the tension on the wound instead of relieving the tension by removing the implant. Specifically, Rosenberg testified,

> I think one deviation [from the standard of care] was failure to intervene in a timely fashion in a developing problem. So, on the 11th, that patient needed to be -- Ms. Whitfield needed to be scheduled for surgery and she wasn't. But another deviation is apparently rather than take her to surgery and wash out the wound, debride any dead tissue, and most likely take out the implant, he elected to put sutures in to close it. So, this is an open wound now, there's an implant underneath. [The wound is] two and a half by one centimeter, and it's open because it was too tight. So, it didn't heal, it pulled apart. There's tension there. So, to think that the solution is to then place sutures and tighten it up again, it doesn't make a lot of sense.

Rosenberg then testified these deviations from the standard of care during the July 11 post-operative procedure were causes of her damages.

Thus, the factual dispute about Schimpf's mental state—whether he was angry because Whitfield showed another doctor his allegedly shoddy work—at the July 11 appointment was important to Whitfield's case. If Whitfield could prove Schimpf was not in a sound state of mind when treating her, particularly if the jury found reason not to believe Tolbert's testimony that Schimpf would "never be angry," it would increase the likelihood the jury would find Schimpf deviated from the standard of care in the way Rosenberg claims. In addition, if Whitfield could prove Schimpf was angry at her for showing his work to another surgeon, this may have been viewed as an acknowledgment by Schimpf that there were problems with the quality of the work he did in the original surgery.

For these reasons, whether Schimpf was angry as Whitfield testified is a significant issue. The only outside witness to this interaction was Tolbert. Tolbert denied Schimpf was angry during the appointment. Thus, there was a credibility contest between Tolbert and Whitfield, and Whitfield was prejudiced by not being allowed to introduce evidence that Tolbert may have been biased towards Schimpf.

### III. Admissibility of the Experts' Testimony based on Whitfield's Rule 35, SCRCP, Examinations

Whitfield argues the trial court erred in allowing Schimpf's previously-designated experts to offer opinion testimony based in part on their physical and mental examinations of her. During discovery, Schimpf filed a motion under Rule 35, SCRCP, to require Whitfield to undergo a mental examination by Dr. James Ballenger—Schimpf's psychiatry expert—and a physical examination by Dr. Jorge Perez—Schimpf's plastic surgery expert. Whitfield filed a memorandum in opposition, arguing that, under *Fairchild v. South Carolina Department of Transportation*, 398 S.C. 90, 727 S.E.2d 407 (2012), an adverse party's expert may not perform Rule 35 examinations on an opposing party because a retained expert is not "independent." At a pretrial hearing regarding the motion, Schimpf argued there is nothing in the text of Rule 35 that requires the circuit court to appoint an "independent" examiner.[7] Circuit Court Judge Alex Kinlaw granted Schimpf's motion and required Whitfield to submit to the examinations. Whitfield complied with the order and attended the examinations.

---

[7] At the hearing, Schimpf correctly pointed out the word "independent" does not appear in the Rule. This Court has recently emphasized that trial courts should apply the language of the Rules. *See Kitchen Planners, LLC v. Friedman*, 440 S.C. 456, 463, 892 S.E.2d 297, 301 (2023) (clarifying the Rule 56(c), SCRCP, standard is "the 'genuine issue of material fact' standard set forth in the text of the Rule" and does not include the "mere scintilla" language added by case law); *Deutsche Bank Nat'l Tr. Co. v. Est. of Houck*, 440 S.C. 409, 412-13, 892 S.E.2d 280, 281-82 (2023) (abolishing the "logical relationship test" added by case law for the Rule 13(a), SCRCP, determination of whether a counterclaim is permissive or compulsory and clarifying the determination is "governed by the plain language of" the Rule). However, we need not address whether Rule 35 examiners must always be independent because, as we explain, Whitfield incorrectly relies on Rule 35—a discovery rule—for her evidence admissibility argument.

Whitfield filed a motion to "prevent the Defendants from introducing any evidence to the jury regarding the defense's plastic surgery and psychological examinations of Plaintiff." Whitfield argued the experts' testimony about the examinations should be excluded because *Fairchild* established a party may not use his or her own expert to perform a Rule 35 examination. The trial court denied the motion, and Schimpf's experts testified to opinions based in part on their examinations of Whitfield. The court of appeals affirmed. *Whitfield*, Op. No. 2022-UP-417, at 2.

In her brief to this Court, Whitfield relies exclusively on *Fairchild* to support her argument the experts' testimony should have been excluded. The issue in *Fairchild*, however, was whether the trial court erred by denying a Rule 35 request. Rule 35 is a discovery provision, and *Fairchild* did not involve the admissibility of evidence. 398 S.C. at 106-11, 727 S.E.2d at 415-18. Whitfield's motion to prevent the experts from testifying based on their examinations does not mention a single evidentiary principle that would lead to the testimony's exclusion, nor does she point to an evidentiary rule in her brief to this Court. Instead, her argument is essentially that, because the discovery order was unlawful under Rule 35 and *Fairchild*—a point we find it unnecessary to address—the facts revealed through that discovery are inadmissible. Whitfield's arguments about the admissibility of the experts' testimony are indistinguishable from the arguments she made during the discovery dispute. She is attempting to recharacterize her discovery objection into an evidentiary objection. Thus, Whitfield's argument that it was error to exclude the experts' testimony because of Rule 35 and *Fairchild* is without merit.

## IV. Conclusion

The trial court erred by refusing to admit evidence regarding Tolbert's sexual relationship with Schimpf, her salary, and the free cosmetic procedures she received from Schimpf. We reverse the court of appeals and remand to the court of common pleas for a new trial.

**REVERSED AND REMANDED.**

**KITTREDGE, C.J., JAMES, HILL and VERDIN, JJ., concur.**