OLIVE E. PLATNER, Appellant, *v.* GEORGE PLATNER et al., Respondents.

In an action upon a promissory note, the defense was, in substance, that defendants purchased for plaintiff, and with her money, certain United States bonds; that, she not desiring to be known as the purchaser, they were bought in a defendant's name, and left in their hands for safe keeping, the note being given as a means of insuring the delivery of the bonds when called for, or of obtaining a compensation therefor if they were withheld; and that the bonds were subsequently delivered to plaintiff's husband, who was her authorized agent. Upon the trial one of the defendants was allowed to testify to conversations with plaintiff's husband, who was then deceased, in one of which he requested witness to go and purchase the bonds in his own name. No authority had then been shown in plaintiff's husband to act for her, and the evidence was objected to on that ground; the authority was subsequently proved, and it appeared from the record that the trial court knew that this should be established before the declarations were competent. *Held,* that the objection was simply to the order of proof, which is always in the discretion of the court, and so was untenable.

Also *held,* that the testimony was relevant.

The testimony was also objected to as in violation of the spirit of section 399 of the Code of Procedure; *held,* untenable.

Whatever evidence is offered which will assist in knowing which party speaks the truth of the issues in an action is relevant; and, when to admit it does not override other formal rules of evidence, it should be received.

E., a witness for defendant, was permitted to testify that plaintiff's husband, prior to the giving of the note in suit, had talked with witness about the purchase of, or investment in United States bonds; this was

objected to as hearsay and irrelevant. *Held*, untenable ; that it was not hearsay, as what was said was not given in evidence ; and that it was relevant.

One of the defendants testified that, when the bonds were given up, he asked plaintiff's husband if he had the note with him, that he said he had not, but " would bring it over or destroy it, one of the two, *same as he had done a number of times*." The clause italicized was objected to as hearsay and irrelevant. *Held*, untenable ; that if intended by the witness, as the statement of a fact known to him, it was relevant ; if intended as an utterance of the husband, it was part of the *res gestæ*, and so competent.

The denial of a motion to strike out incompetent evidence admitted on a jury trial without objection is not error ; it may be retained in the discretion of the court ; the remedy of the party is to ask for instructions to the jury to disregard it.

Where a witness, in answering a proper question, with proper and responsive matter, testifies to something, irresponsive and incompetent, an objection does not reach it ; the proper course is for the party to move to strike out the improper portion of the answer, or to ask instructions to the jury that they disregard it.

Where part of a conversation with a party to the action, or his agent, has been given in evidence by the opposite party, any other or further part of the conversation, which will, in any way, explain or qualify that given, may be proved in reply ; but portions of the conversation not thus connected with that proved are not made admissible.

(Argued June 18,.1879 ; decided September 16, 1879.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, affirming a judgment in favor of defendants, entered upon a verdict and affirming an order denying a motion for a new trial.

This action was brought upon a promissory note made by defendants, dated April 1, 1867, payable to plaintiff or bearer.

The answer admitted the execution of the note and alleged that it was given under the following circumstances, to wit : " This defendant, George Platner, at the request of Stephen H. Platner (now deceased), who was the husband of said plaintiff (said Stephen H. Platner being at that time largely insolvent, and having made a general assignment for benefit of creditors), some time before the 1st day of April, 1867 (the date of said note), accompanied said Stephen H. Platner to a national bank for the purpose of purchasing United States

government bonds of the par value of $3,000, or thereabouts, to be paid for (as stated by said Stephen H. Platner), with the money of said plaintiff, but in consequence of the financial situation of the said Stephen H. Platner, and the alleged and rumored connection of said plaintiff with his pecuniary matters and affairs, the nominal title to said bonds was to be in these defendants (who were nephews of said Stephen H. Platner), and they were to give their note to said plaintiff for the cost and expenses of said bonds. That at said time said bank had not said bonds on hand, but the cashier or some officer thereof stated to said defendant, George Platner, and to said Stephen H. Platner, that it would shortly procure a supply.

" That thereafter, and on or about the time of the date of said promissory note, said Stephen H. Platner delivered to these defendants a large sealed envelope or package which, he stated and represented to them, contained United States government bonds, the purchase price of which, including accrued interest on said bonds, the current market premium thereon, and the commissions of the bank from which said bonds were procured, amounted to the sum for which said note was given, to wit : To the sum of $3,569.31, and that same had been purchased by him at said bank under the arrangement above stated, and had been paid for by him with moneys belonging to said plaintiff, and thereupon requested these defendants to execute and deliver to him the promissory note mentioned and described in said complaint, which he had already prepared, which they accordingly did. That shortly thereafter said Stephen H. Platner called upon these defendants and requested them to deliver up to him the said bonds so purchased and delivered to them as aforesaid, that the interest coupons thereon, then due, might be severed from said bonds and collected. That these defendants then requested the delivery up to them of their said promissory note, and said Stephen H. Platner then and there promised and agreed that if said bonds were delivered up to him that he would deliver the same to his wife (said plaintiff), and

that he or said plaintiff (his wife) would destroy the said promissory note so given by these defendants for the cost of said bonds as aforesaid, being the same promissory note mentioned and set out in said complaint. That these defendants, relying upon the said promise and assurrance of the said Stephen H. Platner, and not otherwise, and only in consideration thereof delivered up to him the said bonds, and as they are informed and believe, same were thereupon delivered by said Stephen H. Platner to said plaintiff."

The further facts appear sufficiently in the opinion.

*R. E. Andrews*, for appellant. The admissions of an agent are only receivable when there is authority to make them. (1 Phil. Ev. [Edwds' 1st ed.], 512, 513, and note.) They are only evidence when they form a part of the contract entered into by the agent on behalf of his principal. (*Thallheimer* v. *Brinckerhoof*, 4 Wend., 397.) To be admissible they must constitute the fact to be proved. (*Luby* v. *H. R. R. R. Co.*, 17 N. Y., 133; *Anderson* v. *R., W. and O. R. R. Co.*, 54 id., 340; *Erben* v. *Lorrillard*, 19 id., 302; 32 Barb., 34; *First Nat. Bk.* v. *Ocean Nat. Bk.*, 60 N. Y., 297; *Bown* v. *Nat. Bk. of Woodruff*, 11 Hun, 229.) Plaintiff having once upon the trial objected to certain evidence, and her objection having been overruled, she was not obliged to repeat the objection to the same class of evidence subsequently offered. (*Mitchell* v. *Rouststone*, 2 Hall, 351; *King* v. *Havey*, 46 Cal., 560; 13 Am. R., 217; *Dilleber* v. *Home L. Ins. Co.*, 69 N. Y., 260.)

*John Gaul*, for respondents. It was competent to prove the acts and declarations of plaintiff's husband in connection with the inception, execution and delivery of the note in suit. (2 Best Ev. [Wood], 97, and note; *Woodbury* v. *Larned*, 5 Minn., 339; opinion of LEARNED, J. [fol. 633]; *Parish* v. *Parish*, 4 Den., 157; *Chester* v. *Dickerson*, 52 Barb., 365; 3 Waits' Pr., 125; *Caldwell* v. *N. J. Steamboat Co.*, 47 N. Y., 282; *Bedell* v. *Powell*, 13 Barb., 183; *Seeley* v. *Chitten-*

*den,* 4 How., 265; *Polhamus* v. *Moser,* 30 N. Y. Supr. Ct. R. [7 Robt.], 489; *Hildebrandt* v. *Crawford,* 65 N. Y., 107; 6 Lans., 502.) The admissions or declarations of an agent in reference to a matter in which he has authority to bind his principal, are, if material to the issue, always admitted as evidence against his principal. (2 Best Ev. [Wood]. 969; *Cliquot Champagne,* 3 Wall. [N. S.], 114; *Batchelder* v. *Emery,* 20 N. H., 165; *Runk* v. *Ten Eyck,* 24 N. J., 756; *Covington, etc., R. R. Co.* v. *Ingles,* 15 B. Monr. [Ky.], 637; *Tuttle* v. *Turner,* 28 Texas, 759; *Wiggins* v. *Leonard,* 9 Iowa, 194; *Woods* v. *Banks,* 14 N. H., 101; *Fogg* v. *Child,* 13 Barb., 246; *Burnham* v. *Ellis,* 39 Maine, 319; *Cortland Co.* v. *Herkimer Co.,* 44 N. Y., 22; *Goodwin* v. *Hirsch,* 37 N. Y. Sup. [5 J. & Sp.], 503.) To establish the agency of plaintiff's husband, it was proper to give evidence showing acts or declarations of his of a character similiar to the act under investigation, and to show acquiescence in, or ratification of, these acts or declarations by plaintiff. (Paley on Agency, 171; Story on Agency, 111–117; 1 Phill. Ev., 104; 1 Cow. & Hill's Notes, 188, note 183, and p. 189, note 187; *Cobb* v. *Lunt,* 4 Green, 503; *Bunten* v. *Orient Mut. Ins. Co.,* 4 Bosw., 254; *Riley* v. *Suydam,* 4 Barb., 222; *Ripley* v. *Mason,* Hill & Den. Supp., 69; *Du Flor* v. *Powers,* 14 Abb. [N. S.], 391; *Adams* v. *Mills,* 38 N. Y. Super. [6 J. & S.], 16; affirmed, S. C., 60 N. Y., 533; 1 Cow. & Hill's Notes, 187; *Barry* v. *Foyles,* 1 Pet. S. C. R., 199, 201, 204; *State Bk.* v. *Wilson,* 1 Dev., 484; *Curtis* v. *Ingham,* 2 Vt., 286 ; *Mott* v. *Kipp,* 10 J. R., 478 ; *Wheeler* v. *Hambright,* 9 Serg. & Rawl., 390, 396, 397.) If defendants, when they had put in all their proof, failed to bring home to plaintiff knowledge of each and every of the transactions proved, then it was the duty of the plaintiff to move to strike out the evidence of such transactions as were not brought home to her knowledge ; a motion of that kind made before the close of defendants' evidence was premature. (*Polhamus* v. *Moses,* 30 N. Y. Supr. Ct. [7 Robt.], 489.) In actions involving questions of fraud the intent is

always a material inquiry, and for the purpose of establishing that, the other acts of a similar character done about the same time may always be shown. (*Amsden* v. *Manchester*, 40 Barb., 158; *Meyer* v. *Gordel*, 31 How., 456; *Talor* v. *Fisher*, 2 Robt., 669; *Van Kleek* v. *Leroy*, 4 Abb. Pr. [N. S.], 431; *Richards* v. *Millard*, 56 N. Y., 574; *Hall* v. *Taylor*, 18 id., 588.)

Folger, J.   This is a case purely of fact.   There are no issues of law; and the only questions of law are those which arose in the course of the trial upon the rejection or admission of evidence.   Though the objections to evidence were stated in different words, they were substantially that it was not relevant.   Now the meaning of the word relevant, as applied to testimony, is that it directly touches upon the issue which the parties have made by their pleadings, so as to assist in getting at the truth of it.   It comes from the French *reliever*, which means to assist.   Whatever testimony was offered, which would assist in knowing which party spoke the truth of the issue, was relevant; and when to admit it did not override other formal rules of evidence it ought to have been taken.

It is well, then, to see what was the issue raised by the pleadings.   The complaint is upon a promissory note made by the defendants, jointly and severally, one day after date, to the plaintiff or bearer, for $3,569.31, with interest, for value received.   The answer alleges certain circumstances as going before and leading to the making of the note; sets up that the note was given for certain United States bonds, and that the amount of the one was the cost of the other; that those bonds were handed to the defendants by the plaintiff's husband, when they made and delivered the note to him; and that afterwards the bonds were handed back again to him, upon a promise given that the note should be delivered up to them or destroyed.   The allegation of those preceding circumstances was to tender an issue that by reason of the pecuniary embarrassment of the plaintiff's husband,

and the rumors of her connection with his business affairs, it was prudent for the plaintiff in general, that even investments made with her own money should not be in her name, but in the name of the defendants or one of them ; and that in pursuance thereof these bonds were bought with her money in the name of one of the defendants, and this note given for the amount of the cost and expense thereof, and that to give color to the matter one of the defendants went with the husband of the plaintiff to make the purchase of the bonds, in the name of that defendant, but with the money of the plaintiff and for her use and ownership. Apart from the allegation of the precedent circumstances, the answer substantially avers what was the consideration for the note, and that the note was in effect paid by a return of the same consideration.

The testimony shows that the reliance of the defendants to prove the preceding circumstances above named and the payment, was necessarily upon facts which took place between them and the husband of the plaintiff. The note was to the plaintiff by its terms. It was to her or bearer, and thus negotiable. A payment to any one who produced the note to them as the bearer of it would have been a good discharge of the defendants from their obligation. But when that took place which they claim was in effect a payment of the note, it was not produced to them. Hence it was that though negotiable and payable to any one who was the bearer of it, they did not make a good payment of it to the husband, he not having the note then in possession, unless he had authority from the plaintiff to receive payment. And as the transaction between them and the husband was not technically a payment, but only in effect such, inasmuch as it was only an exchange of public securities for the note, it was not available against the plaintiff as a payment, unless her husband had authority to deal generally in her affairs, and to accept for her those bonds instead of money. Thus it was material and proper for the defendants to prove that he had such authority ; and any

testimony was relevant thereto which went to show his prior and continued mode of dealing with her securities and evidences of debt, and her knowledge and acquiescence. The extent to which such testimony should come in was in the discretion of the circuit judge. It was also relevant to prove that the consideration of the note was United States bonds. Had the allegation of the answer been to the purport that the defendants gave this note for those bonds, as a purchase of them to become the property of the defendants, and had such been the fact relied upon, it would have been enough to have shown that they made and delivered the note, and in exchange for it received the bonds. That was not the fact averred in the answer, nor claimed on the trial. The claim was that the bonds were bought for the plaintiff and with her money, in fact for her, but for prudential reasons in the name of a defendant, that they were left with the defendants for keeping, and the note taken, though evidence on its face of indebtedness, yet really as a means of insuring a return of the bonds when called for, or of obtaining a compensation if they were withheld. And the claim was that the return of the bonds was a carrying out of the long preceding understanding on which they were received, and a discharge of the obligation of which the note was the proof. Hence testimony of any precedent negotiation or transaction between the defendants and the plaintiff, or her authorized agent, paving the way for or leading up to the formation of such a bargain and to its consummation, was relevant, if not too remote or disconnected.

It follows that testimony which assisted in making known the truth upon this issue, was relevant, and if competent in itself, and not in the face of other rules of evidence, ought to have been admitted.

We may now take up *seriatim* the points made by the plaintiff in this court. The first point made is that the testimony was illegally received, wherein one of the defendants sought to show that the husband of the plaintiff asked him

to go to Catskill to get some government bonds in the name of that defendant, and the accompanying conversation. The objections made at the trial were, first, that it was the declaration of a third person, who had no authority to act for the plaintiff; second, that it was in violation of the spirit of the 399th section of the Code, the husband having died before trial ; third, that it was irrelevant. There was also a motion to strike it out as hearsay and incompetent.

The first objection was not well taken. True, there had not yet been authority shown in the plaintiff's husband to act for her. It is plain, however, from the record that the trial court knew that it was needful that that should be shown before his declarations were competent. It was an objection to the order of proof, which is always in the discretion of the court.

It was not open to objection for any reason arising from the provision of the 399th section.

Was the testimony irrelevant ? By which is meant, in this case, that the connection between the fact which it proves and the fact in issue is too remote and conjectural. In determining whether evidence is relevant, all the issues must be kept in view, as it may be admissible as to one though not as to another. Thus, here, if the only issue was one of which we have spoken, that the defendants bought the plaintiff's bonds as their own, and gave their note for the amount of the purchase, and afterwards, it being then agreed that she take them in payment of the note, they were handed over and the note discharged, the evidence objected to might be irrelevant; for it would not matter where, when or how the bonds were in the first instance got by the plaintiff's husband. But the issue is that reasons existed in the affairs of the husband which made it needful for him and the plaintiff that her dealings should be veiled under the name of the defendants or one of them ; and that she desiring to invest in these bonds, it was thought safer to do so in the name of the defendants or one of them, they giving their note to her, so as to make her secure. Then it is relevant to show what

took place by word or act of the plaintiff, or by authority from her, which led the defendants to the act of giving the note and taking the bonds into their safe-keeping. All the acts and declarations of the husband are matter which touched the defendant George Platner and led him and his brother up to the making of the note. They do not deny that they gave the note. They say that it is not to be read merely as an evidence of indebtedness, that it grew out of a state of circumstances by which they were induced to give their obligation in that form, for an arranged purpose, and having substantially carried out that purpose, their obligation is discharged. In such case, it is relevant to show that the state of things existed, out of which could naturally grow such a transaction. The claim is of an arrangement by which the investments of the plaintiff should be protected from her husband's creditors, by being taken in the name of the defendants. Part of the testimony objected to was of acts to that end, of which the witness was personally knowing. The other part of it was of declarations at the time those acts were done ; the *res gestæ* therewith. That they took place some time before the giving of the note, does not matter. They were as much connected with that act as if it came in on the heel of them. It was they that led the defendants to the making of the note, in the absolute form of it, and which made the giving up of the bonds by them afterwards a discharge of them from the note.

The second point of the appellant is that it was error to deny the motion to strike out from that evidence testimony of declarations of the husband. The ground taken was that it was hearsay and incompetent. Of course, it was upon the defendants to show that the husband was the agent of the plaintiff. After that should be shown, his declarations when about the work of the plaintiff, were not hearsay, but the same as if her declarations. Whether the declarations should be testified to before his agency was proved was a matter for the discretion of the trial court. It is hardly susceptible of contest, that before the trial was over he was

shown to be her agent to deal generally in her affairs. Hence his declarations when part of the *res gestæ* were not hearsay, and if relevant were competent. We have shown that they were relevant.

The considerations above put forth meet the third point of the appellant. The testimony aimed at by it went to show why the note was given at a lapse of time after the trip to Catskill, and that the arrangement for it made some months before was not until then put in form. The fourth point is in the same plight as those above noticed.

The fifth point is that the testimony of Mr. Esselstyn that the husband had talked with him about the purchase of or investment in government bonds, in the fall of 1866, at his office, was improperly received. The objection was that it was irrelevant and hearsay. It was not hearsay. What was said by the plaintiff's husband was not suffered to come in evidence. That the husband did talk with the witness, was a fact of itself. It was a fact in the knowledge of the witness, and to that fact only he spoke. Was it relevant? Had the plaintiff, having the same primary connection as the husband had with the taking of this note, sought out Mr. Esselstyn, and led him to talk of buying United States bonds, at the time and place named by that witness, would it not have been relevant? We think that it would. It was not the less relevant that her general agent, the manager of her pecuniary affairs, did the same.

The sixth point. The witness George Platner, in telling of his giving up the bonds to his uncle, said that he asked his uncle if he had the note with him, that he said he hadn't it, " would bring it over or destroy it, one of the two, *same as he had done a number of times.*" The appellant claims that the phrase in italics was illegally received. It was objected to as hearsay and irrelevant. As to its being hearsay, it is doubtful whether the witness meant to say that that was the language at that time of his uncle, or whether it was not the witness' statement of a fact, viz.: that his uncle had a number of times brought over or destroyed notes.

The latter is not improbable. The verb used to describe, is *done*, implying an act; not *said*, implying an utterance. Then it was not hearsay. It was a fact. If it was the statement of a fact, it served to show that the witness had reason for giving up the bonds without on the spot getting back the note made by the defendants, or taking written proof that it was paid. And thus it was relevant. But if it was meant by the witness that it was an utterance of his uncle made at that time, it was not hearsay. It was something said while doing an act in relation to this note, that is, receiving and taking away the bonds for which it was given, an act in the business of the plaintiff; and hence part of the *res gestæ*. It was relevant too in that view.

The seventh point is that the testimony of George Platner, as to a conversation between him and his uncle about the Concklin note, should have been stricken out on motion thereto. The testimony was allowed, on the notion that knowledge and acquiescence would be brought home to the plaintiff. It may be conceded that it was not so done. It may be conceded also that when the motion to strike out was made, the defendants had made an end of their evidence as to the Concklin note. The motion to strike out was then made. It was not renewed, nor the matter again noticed. It should have been. "Evidence admitted either without objection, or properly on an objection, which for any reason should not be considered by the jury or affect the result, is not necessarily stricken out, but may be retained in the discretion of the court, the remedy of the party being to ask for instructions to the jury to disregard it. There was no request to instruct the jury to disregard the evidence, and no exceptions to the charge of the judge in respect to it, and the weight to be given to it;" (see opinion in MS. of ALLEN, J., in *Marks* v. *King*, reported in Mem., 64 N. Y., 628.) This is conclusive against this point.

The eighth point is that the testimony of George Platner, that his uncle said in 1858–1859 "he wanted to get his property out of his hands as fast as he could," was illegally

received. The objection was that it was hearsay, irrelevant, immaterial and incompetent. It will be noticed here that the objection was not taken to the question put by the defendants' counsel. The question was proper and pertinent. Nor was the objection made until the witness had given the answer. The answer had been uttered without objection and was before the court and jury. Of what avail was it then to object? The proper course was for the plaintiff's counsel to have moved to strike out the part of the answer deemed reprehensible. The question was proper. The answer, let it be conceded, was improper. The office of an objection is to stop an answer. When the question is proper and has been put, and the witness answers that with proper and responsive matter, and of his own head adds something else irrelevant, an objection does not check it. The improper part of the answer is to be met, and its effect taken away by motion to strike out, or request for instruction to the jury that they disregard. (*Farmers' Bank of Washington Co.* v. *Cowan*, 2 Abb. Ct. of App. Decs., 88.) Though the court sustain the objection, the improper evidence is on the record. A motion made to strike out and granted removes it therefrom.

The ninth point is that the plaintiff should have been allowed to state, when she was on the stand as a witness, on her direct examination resumed, all that her husband said in a conversation, as to the taking place of which she had been asked by the defendants on her prior cross-examination. She was asked what was her best impression about there being at the bottom of the note a certain certificate. In reply she had said : I couldn't say ; when I found the note I took and looked at it ; talked it over with him. The question was then put : Did you and he say anything about there being a certificate at the bottom ? She answered that she didn't think that they did. She also said, upon being questioned, that they talked some about the amount of the note ; but nothing about it being dated back. On direct examination resumed, plaintiff offered to show the whole of that conver-

sation. It was excluded, for the reason that the defendants had not gone into it, save to show in a negative way that it was not talked about.

There is a limit to the extent to which a party may go in calling out what was said by and to him in a conversation, parts of which the other party has proven: (*Rouse* v. *Whited*, 25 N. Y., 170.) In the case just cited, the rule for that limit is adopted and followed which is laid down in *Prince* v. *Samo* (7 Ad. & Ell., 627). The rule is this; that where part of a conversation has been given in evidence, any other or further part of that conversation may be given in evidence in reply, which would in any way explain or qualify the part first given. In the case last cited, the rule is applied only to the declarations of a party to the action; and so far it is approved in *Garey* v. *Nicholson* (24 Wend., 350). But even if the conversation held by the plaintiff's husband with her should be deemed the declarations of a third person not a party to the action, the principle of the rule will apply. It is so laid down in 1 Phil. on Ev., *415, but without the citation of English authority directly in point. The offer of the plaintiff, in the case in hand, was to show the whole conversation, not limiting the evidence to what was said that would explain or qualify what had been proved by the defendant. The plaintiff made also a specific offer to prove that her husband said that the defendants gave the note in suit for the $2,900 note that she owned. Clearly this did not relate to anything which the defendants had shown, as we have stated it.

The reason given by the trial court for excluding the evidence was that the defendants had not gone into the conversation, except in a negative way. Be this reason good or bad, the action of the court was proper, on the ground we have stated, and must be sustained.

We have thus gone over all of the points made in this court by the appellant. They do not show such error in the conduct of the trial as calls for a reversal of the judgment. The question of fact would have been perplexing upon the testi-

mony, had we been called upon to decide it. The jury have done that; and it is for us to say only whether they were correctly guided by the court, and had nothing given to them or kept from them improperly ; that is to say, it was for the jury to find the fact.; it is for us to give the law.

The defendants are, touching the law, blameless ; and the judgment must be affirmed. ·

All concur.

Judgment affirmed.