543 S.E.2d 586

**The STATE, Respondent,**

v.

**John HAMILTON, Appellant.**

**No. 3317.**

Court of Appeals of South Carolina.

Heard Jan. 8, 2001.
Decided March 12, 2001.

346

348

Assistant Appellate Defender Robert M. Pachak, of South Carolina Office of Appellate Defense, of Columbia, for Appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Robert E. Bogan, Senior Assistant Attorney General Charles H. Richardson; and Solicitor Warren B. Giese, all of Columbia, for Respondent.

ANDERSON, Judge:

John Hamilton appeals from his convictions for assault and battery with intent to kill (ABIK) and possession of contraband. Hamilton was sentenced to life imprisonment without parole for ABIK and ten years for possession of contraband. He argues the trial court erred in (1) excluding psychiatric testimony as irrelevant and (2) denying his motion for a mistrial due to the Solicitor's improper comments during closing arguments. Additionally, Hamilton claims the trial court lacked subject matter jurisdiction because the indictment for possession of contraband was insufficient. We affirm.

## *FACTS/PROCEDURAL BACKGROUND*

Hamilton was an inmate at the Broad River Correctional Institute (Broad River) in Richland County, South Carolina. Inmates at Broad River are housed in four dormitories, each divided into two wings. Each wing houses approximately 125 inmates and is manned by one correctional officer. On December 13, 1996, Officer Brandon Jeter was the correctional officer on duty in Hamilton's dormitory wing.

Hamilton worked that morning at his prison job and returned to the dormitory around lunchtime. Hamilton did not intend to return to work for the afternoon, but had forgotten to inform his supervisor, which can result in disciplinary action for an unauthorized absence. Hamilton stated he asked Officer Jeter to allow him to exit the dormitory. Jeter refused, saying he would open the door after he sorted the mail. According to Hamilton, by the time Jeter finished sorting the mail, it would have been too late for him to get to his job and his supervisor would have written him up for refusing to work. He would then have been placed on lockup, which is administrative segregation.

A nearby inmate, Karim Almatin, heard Officer Jeter and Hamilton arguing and convinced Hamilton to step into his room, which was located next to Jeter's desk. Almatin told Hamilton he "need[ed] to let it go." While Hamilton was in Almatin's room, he heard Officer Jeter open the door for a dorm worker.[1] Hamilton attempted to slip out of the door behind the dorm worker. Jeter refused to allow Hamilton to exit as he was wearing dormitory shoes, similar to flip flops, which the inmates are not permitted to wear outside. Hamilton cursed at Jeter but retreated into the dorm.

Hamilton went back into Almatin's cell. When the dorm worker returned, Officer Jeter opened the door. Hamilton again attempted to exit. This time, he successfully forced his way into the common area. Officer Jeter and Hamilton exchanged words. Jeter asked the yard officer, Tara Hopkins, to take Hamilton to a holding cell while Jeter wrote him up for a disciplinary infraction. Hopkins told Jeter she could not take Hamilton to the holding cell because he was wearing improper shoes. Jeter and Hopkins testified Hamilton yelled words to this effect: "I'll teach you mother f____rs who to mess with."

Hamilton turned around and walked back into the dorm area. Officer Hopkins followed him. Hopkins lost sight of Hamilton, stating he "vanished" as she entered the unit.

---

1. A dorm worker is an inmate allowed more access to common areas by virtue of good behavior. The position is comparable to that commonly referred to as prison trustee.

Hopkins next saw Hamilton approaching Jeter with a home-made knife (shank) in his hand.

Officer Jeter was sitting at his desk sorting mail when he heard Officer Hopkins yell: "Move ... Get your gas, get your gas." Jeter looked up and saw Hamilton running toward him fumbling with something behind his back. Jeter jumped out of his chair. Hamilton chased him around the office and stabbed him in the back with the shank. Officer Jeter struck Hamilton and was eventually able to spray him with pepper gas. While trying to get away from Hamilton, Jeter dropped the gas and his keys.

Hamilton again pursued Officer Jeter. Officer Hopkins intervened with a billy stick, striking Hamilton on the wrist to knock the shank out of his hand. The shank did not fall because it was tied to Hamilton's wrist. Hamilton attempted to stab Jeter by reaching around Hopkins. Jeter and Hopkins testified Hamilton yelled: "I'm gonna kill, I'm gonna kill you, mother f____."

Officer Hopkins retrieved Officer Jeter's gas and sprayed Hamilton with it. Almatin and another inmate retrieved the keys and assisted Hopkins and Jeter. Hopkins called for assistance and other officers arrived. At least one officer escorted Hamilton outside the dormitory. At that time, Hamilton did not have the shank.

The incident occurred around 11:15 a.m. Thereafter, approximately eight officers instituted a lock-down,[2] a shake-down,[3] and a body strip search of all inmates in the dormitory wing. About 1:45 p.m., Officer Gregory Wells found a shank hidden in a mop head in a room about twenty-five feet from the site of the incident. Wells testified he noticed a small amount of wet blood on the mop head, which led him to inspect the mop.

Officer Jeter suffered serious injuries and stayed in the hospital approximately five days. The shank went between Jeter's ribs and penetrated his lung, requiring surgery to remove a portion of the lung. Jeter had not returned to work

2. Return of all inmates to their cells.

3. Full search of all cells.

as a corrections officer at the time of the trial in November of 1998.

Hamilton testified at trial. He admitted he usually carried a shank and that he carried his shank that day. In addition, Hamilton admitted he stabbed Jeter. Yet, he denied the shank found by Officer Wells was his shank. He further denied threatening to kill Jeter. Hamilton conceded the assault was vicious. Hamilton declared he "wasn't being malicious" when he assaulted Jeter; rather, the verbal altercation "just escalated" and the incident was a result of the "heat of the moment."

## ISSUES

I.   Did the Circuit Court err in excluding as irrelevant the testimony of Dr. Rathle, who performed a psychiatric evaluation of Hamilton in March 1997?

II.   Did the Circuit Court err in denying Hamilton's motion for a mistrial based on improper comments in the Solicitor's closing argument?

III.   Did the Circuit Court have subject matter jurisdiction to try Hamilton for possession of contraband based on the indictment?

## LAW/ANALYSIS

### I.   Exclusion of Dr. Rathle's Testimony

Hamilton contends the Circuit Court erred in excluding the testimony of Dr. Jacques M. Rathle, who completed a psychiatric evaluation of Hamilton in March 1997. Hamilton asserts the testimony was relevant to the question of malice, a key issue in determining whether Hamilton committed assault and battery of a high and aggravated nature (ABHAN) or ABIK.

### A.   The Proffer

Upon the close of the State's case, defense counsel made a proffer explaining Dr. Rathle examined Hamilton during a routine examination of all inmates in the medium security unit. Defense counsel requested a ruling that the evidence did not open the door to Hamilton's prior disciplinary records. Defense counsel stated that, as a result of the examination, Dr.

Rathle diagnosed Hamilton with antisocial personality disorder. In February of 1997, after he assaulted Officer Jeter, Hamilton was prescribed Buspar. Dr. Rathle replaced Buspar with Benadryl. Another doctor later prescribed Vistaril, in lieu of Benadryl.

The State objected to the admission of the evidence on the ground of relevancy and on the ground the evidence would confuse the jury. The trial judge listened to Dr. Rathle's testimony *in camera.* Dr. Rathle testified that, in March of 1997, he diagnosed Hamilton with antisocial personality disorder. Dr. Rathle defined a person with antisocial personality disorder as one "who has some difficulty in adjusting to the societal norms ... due to irritability, ... restlessness, ... anxiety, [or] ... lack of conformity." Dr. Rathle professed the Benadryl or Vistaril had a calming effect on a patient with antisocial personality disorder. The intent of prescribing the mild tranquilizers, according to Dr. Rathle, is to sedate the prisoner "to be less irritable, by reason of ... being confined twenty-three, twenty-four hours a day in a cell."

The State again objected to the evidence. The trial judge excluded the evidence as "irrelevant evidence on the grounds of prejudice, confusion or waste of time" under Rule 403, SCRE.

## B. Standard of Review—Admissibility of Evidence

The admission of evidence is within the sound discretion of the trial court. *State v. McDonald,* 343 S.C. 319, 540 S.E.2d 464 (2000); *State v. Patterson,* 337 S.C. 215, 522 S.E.2d 845 (Ct.App.1999). A court's ruling on the admissibility of evidence will not be reversed by this Court absent an abuse of discretion or the commission of legal error which results in prejudice to the defendant. *State v. Mansfield,* 343 S.C. 66, 538 S.E.2d 257 (2000); *State v. Blassingame,* 338 S.C. 240, 525 S.E.2d 535 (Ct.App.1999).

## C. Relevancy: Admissibility of Evidence Under the Common Law

The trial judge is given broad discretion in ruling on questions concerning the relevancy of evidence. *State v. Alexander,* 303 S.C. 377, 401 S.E.2d 146 (1991); *State v.*

*Jeffcoat,* 279 S.C. 167, 303 S.E.2d 855 (1983). Evidence is relevant if it tends to establish or make more or less probable some matter in issue upon which it directly or indirectly bears. *Alexander,* 303 S.C. at 380, 401 S.E.2d at 148; *State v. Schmidt,* 288 S.C. 301, 342 S.E.2d 401 (1986). Only relevant evidence is admissible. *See State v. Petit,* 144 S.C. 452, 142 S.E. 725 (1928). " 'All that is required is that the fact shown legally tends to establish, or to make more or less probable, some matter in issue and to bear directly or indirectly thereon.' It is not required that the inference sought should 'necessarily follow' from the fact proved. Evidence is relevant if it makes the desired inference more probable than it would be without the evidence." Jon P. Thames & W.M. Von Zharen, *A Guide to Evidence Law in South Carolina* 28 (1987)(quoting *Francis v. Mauldin,* 215 S.C. 374, 378, 55 S.E.2d 337, 338 (1949)).

█ However, not all relevant evidence is admissible. *Petit,* 144 S.C. at 466, 142 S.E. at 730–31. Our Supreme Court, in *State v. Petit,* discussed the admissibility of testimonial evidence:

We feel sure that one of the main reasons for much of the misunderstanding as to when evidence should be allowed, and when it ought to be refused, is due to failure to properly distinguish between the legal terms, "relevancy" and "competency," so often used in the law of evidence, and, too generally but erroneously, supposed to be exactly synonymous. Many efforts have been made by courts, judges, and law writers to define the words so as to differentiate them correctly. In all the definitions we have read of "relevancy," we have been impressed much with that given by the New York Supreme Court:

"The meaning of the word relevant, as applied to testimony, is that it directly touches upon the issue which the parties have made by their pleadings, so as to assist in getting at the truth of it. It comes from the French relever, which means to assist." *Platner v. Platner,* 78 N.Y. 90, 95 (1879).

As to the other word "competency," or rather, "competent evidence," *Black's Law Dictionary* gives approval to this definition from Mr. Greenleaf:

"That which the very nature of the thing to be proven requires, as the production of a writing when its contents are the subject of inquiry."

In the "Preliminary Definitions" on the subject of Evidence, in *Corpus Juris,* there will be found a part of one sentence that expresses very clearly a thought we now have in mind, namely:

" * * * It is clear that evidence may be logically relevant and yet inadmissible because not competent, that is, because not the character of proof which the law permits in the particular case." 22 C.J. 65.

Irrelevant evidence is never, properly, admissible in a cause; competent evidence is always admissible; relevant evidence may, or may not, be admissible, depending upon its competency.

Taking together the approved definitions of "relevancy" and "competency" as they are to be applied in the introduction of evidence in the trial of a cause, a fair and brief statement of a rule to keep in mind, seems to us, to be this: Any evidence that assists in getting at the truth of the issue is relevant, unless, because of some legal rule, it is incompetent.

*Petit,* 144 S.C. at 466–67, 142 S.E. at 730–31 (emphasis omitted). In *State v. Gregory,* 198 S.C. 98, 16 S.E.2d 532 (1941), the Court affirmed the trial judge's refusal to permit the admission of relevant evidence which would confuse the jury. The Court stated:

At the outset we repeat the time-honored tenet that ordinarily the conduct of a trial, including the admission and rejection of proffered testimony, is largely within the sound discretion of the trial Judge and his exercise of such will not be disturbed by this Court on appeal unless it can be shown that there has been an abuse of discretion, a commission of legal error in its exercise, and that the rights of the appellant have been thereby prejudiced.....

. . . .

... When it became clear to the presiding Judge that the [evidence sought to be admitted] was unconnected (as testified to by the appellant himself) with the miscellaneous items upon which the State was seeking conviction he, we

think not improperly, ruled out further evidence concerning the former. The situation seems to us to have been one peculiarly appropriate for the exercise of discretion as to admissibility of evidence and to guard against the confusion of the jury by the injection of collateral issues. . . . .

*Gregory,* 198 S.C. at 103–04, 16 S.E.2d at 534. The *Gregory* Court found no abuse of discretion.

■ Relevant evidence may be excluded for undue prejudice even though no specific exclusionary rule requires exclusion. *State v. Alexander,* 303 S.C. 377, 401 S.E.2d 146 (1991); Jon P. Thames & W.M. Von Zharen, *A Guide to Evidence Law in South Carolina* 28 (1987). The Supreme Court adopted the language of Rule 403 of the Federal Rules of Evidence in *State v. Alexander,* 303 S.C. at 382, 401 S.E.2d at 149:

It does not appear that this Court has ever explicitly approved of this general rule, although such a test has been applied in a variety of contexts. We now adopt the language, in pertinent part, of Federal Rule of Evidence 403 that, "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." (Footnote omitted).

Prior to the adoption of the South Carolina Rules of Evidence, our appellate courts often relied on the Federal Rules of Evidence for guidance. *See Riddle v. State,* 314 S.C. 1, 443 S.E.2d 557 (1994)(establishing procedure in accordance with Rule 614 of the Federal Rules of Evidence, supplemented by South Carolina common law); *State v. Doctor,* 306 S.C. 527, 413 S.E.2d 36 (1992)(following Federal Rule of Evidence 804(b)(3)); *State v. Sarvis,* 317 S.C. 102, 106, 450 S.E.2d 606, 608 (Ct.App.1994)(stating that although Fed.R.Evid. 609(b) is not binding, "its bright-line rule does provide some assistance"); *Johnson v. Pritchard,* 302 S.C. 437, 395 S.E.2d 191 (Ct.App.1990)(following Rule 803(16) of the Uniform Rules of Evidence and Federal Rules of Evidence governing the admissibility of ancient documents); *Bain v. Self Mem'l Hosp.,* 281 S.C. 138, 314 S.E.2d 603 (Ct.App.1984)(adopting Rule 805 of the Federal Rules of Evidence).

## D. Relevancy: Admissibility Under the SCRE

South Carolina adopted the South Carolina Rules of Evidence effective September 3, 1995. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, SCRE. *See also State v. Aleksey*, 343 S.C. 20, 538 S.E.2d 248 (2000)(evidence is relevant if it has a direct bearing upon and tends to establish or make more or less probable the matter in controversy). "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of South Carolina, statutes, these rules, or by other rules promulgated by the Supreme Court of South Carolina." Rule 402, SCRE. "Evidence which is not relevant is not admissible." *Id.* "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403, SCRE. *See also State v. Cooley*, 342 S.C. 63, 536 S.E.2d 666 (2000)(although evidence is relevant, it should be excluded where danger of unfair prejudice substantially outweighs its probative value).

Rules 401 and 403, SCRE, are identical to their federal counterparts and are consistent with South Carolina common law. Rules 401 & 403, SCRE (advisory committee's notes). Rule 402, SCRE, is identical to the federal rule, except as amended to reference South Carolina law. Rule 402, SCRE (advisory committee's note).

The State objected to Dr. Rathle's testimony on the grounds of relevance and confusion of the jury. The trial judge excluded the evidence as "irrelevant evidence on the grounds of prejudice, confusion or waste of time" under Rule 403, SCRE.

A trial judge's decision regarding the comparative probative value and prejudicial effect of evidence should be reversed only in "exceptional circumstances." *United States v. Green*, 887 F.2d 25, 27 (1st Cir.1989). *See also State v. Slocumb*, 336 S.C. 619, 633, 521 S.E.2d 507, 514 (Ct.App.

1999)(in addressing the admissibility of evidence under Rule 403, this Court stated: "[G]iven these reports were relevant and the subject of proper cross-examination, we cannot say the trial judge abused his discretion in finding the probative value of this testimony outweighed the danger for unfair prejudice."). We review a trial court's decision regarding Rule 403 pursuant to the abuse of discretion standard and are obligated to give great deference to the trial court's judgment. *See Green*, 887 F.2d at 27. *See also State v. Aleksey*, 343 S.C. 20, 538 S.E.2d 248 (2000)(trial judge is given broad discretion in ruling on questions concerning relevancy of evidence, and his decision will be reversed only if there is a clear abuse of discretion). A trial judge's balancing decision under Rule 403 should not be reversed simply because an appellate court believes it would have decided the matter otherwise because of a differing view of the highly subjective factors of the probative value or the prejudice presented by the evidence. *United States v. Long*, 574 F.2d 761 (3d Cir.1978). If judicial self-restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal. *Id.*

The federal appellate courts are deferential in reviewing a trial judge's evidentiary rulings. *See Salem v. United States Lines Co.*, 370 U.S. 31, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962)(stating the trial judge has broad discretion in the matter of the admission or exclusion of expert evidence and his action is to be sustained unless manifestly erroneous); *United States v. Love*, 134 F.3d 595, 603 (4th Cir.1998)(reviewing a district court's admission of evidence over a Rule 403 objection under a "broadly deferential standard"); *United States v. MacDonald*, 688 F.2d 224, 227–28 (4th Cir.1982)(finding "the appraisal of the probative and prejudicial value of evidence under Rule 403 is entrusted to the sound discretion of the trial judge; absent extraordinary circumstances, the Courts of Appeal will not intervene in its resolution"); *United States v. Leon–Reyes*, 177 F.3d 816, 819 (9th Cir.1999)(appellate court reviews district court's decision to admit or exclude evidence utilizing an abuse of discretion standard); *United States v. Jiminez*, 224 F.3d 1243 (11th Cir.2000)(reviewing the district court's ruling on admission of evidence for abuse of discretion).

■ Under our broadly deferential standard of review, we find Dr. Rathle's testimony was not relevant. Further, we rule that, even if relevant, the evidence should be excluded under Rule 403, SCRE, as tending to confuse the jury.

### E. Right to Present a Defense

■ Hamilton maintains the exclusion of Dr. Rathle's testimony deprived him of his constitutional right to fully present a defense. We disagree.

■ The right to present a defense is not unlimited, but must " 'bow to accommodate other legitimate interests in the criminal trial process.' " *Rock v. Arkansas,* 483 U.S. 44, 55, 107 S.Ct. 2704, 2711, 97 L.Ed.2d 37, 49 (1987)(quoting *Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297, 309 (1973)). While defendants are entitled to a fair opportunity to present a defense, that right does not encompass the right to present any evidence, regardless of its admissibility under the rules of evidence. *See United States v. Lancaster,* 96 F.3d 734 (4th Cir.1996).

### II. Solicitor's Comments During Closing Argument

Hamilton complains the trial judge erred in denying his motion for a mistrial based on the Solicitor's improper comments during the closing argument.

During his closing argument, the Solicitor stated:

[Solicitor]: [L]adies and gentlemen, ... I received good legal training at the start of my legal career. I, like Ms. Quinn, who sits up there with Judge Manning, worked for a Circuit Court Judge and one thing he told me—

[Defense Counsel]: Your Honor, I would object to that. I don't know how that's relevant.

The Court: Basis. Basis of your objection.

[Defense Counsel]: Well—

The Court: Overruled.....

[Solicitor]: Thank you, your Honor.... Mr. Hamilton has violated [the] laws. He has violated our system of justice and he has asked you to be here. Ladies and gentlemen, as the court knows, as our system of justice works, he decided on having a jury trial this week in this case. He got up on

the witness stand and said, "I don't deny these charges." We could have taken fifteen minutes on Monday morning and gotten rid of that.

[Defense Counsel]: Your Honor, may we approach?

The Court: Sure.

The judge conducted a bench conference. Thereafter, the Solicitor continued his closing argument:

[Solicitor]: [The defense] tell[s] you this case is not about malice, that this is some type of borderline assault. Well, ladies and gentlemen, you put me here as a representative of your system of justice, a representative of your community, and I wouldn't bring in to you a borderline case.

[Defense Counsel]: Your Honor, I object to that also.

At this point, another bench conference was held. The Solicitor then resumed his closing argument.

## A. Preservation of Error

Hamilton avers the Solicitor improperly commented on Hamilton's exercise of his constitutional right to a jury trial. The State contends any errors raised by Hamilton in the bench conferences are off the record and, thus, not preserved. The State further alleges the issue regarding improper argument is not preserved for appellate review claiming that, although defense counsel stated "I object to that also," she did not place the basis for the objection on the record.

### 1. Objection Made During Bench Conference

After the judge's instructions to the jury, defense counsel requested an instruction explaining the Solicitor's comments regarding Hamilton's right to a jury trial. Defense counsel argued the jury needed to be informed that, contrary to the Solicitor's implication, Hamilton did not refuse to plead when given an opportunity. She wanted the jury advised "there were never any plea offers or negotiations or anything ever offered to [Hamilton]." The trial judge denied the request and declared: "Actually, [defense counsel], I think you objected before that actually came out of his mouth, in terms of the guilty plea, although it came close. It was a timely objection. We had a side-bar conference. The Solicitor didn't go any

further." Defense counsel moved for a mistrial, which was denied.

An objection made during an off-the-record conference which is not made part of the record does not preserve the question for review. *York v. Conway Ford, Inc.*, 325 S.C. 170, 480 S.E.2d 726 (1997). Here, the initial off-the-record bench conferences were later made a part of the record by the acquiescence and agreement of the judge, Solicitor, and defense counsel. Under this scenario, *York* is inapplicable.

## 2. Objection Must Be on a Specific Ground

It is well settled that an objection must be on a specific ground. *State v. Nichols*, 325 S.C. 111, 481 S.E.2d 118 (1997); *State v. New*, 338 S.C. 313, 526 S.E.2d 237 (Ct.App. 1999). A general objection which does not specify the particular ground on which the objection is based is insufficient to preserve a question for review. *State v. Patterson*, 324 S.C. 5, 482 S.E.2d 760 (1997). In order to preserve for review an alleged error, the objection should be sufficiently specific to bring into focus the precise nature of the alleged error so it can be reasonably understood by the trial judge. *New*, 338 S.C. at 318, 526 S.E.2d at 239. *See also Campbell v. Bi–Lo, Inc.*, 301 S.C. 448, 392 S.E.2d 477 (Ct.App.1990)(where ground for objection is not stated in record, there is no basis for appellate review). Rule 103(a)(1), SCRE, however, only requires specificity where the ground for objection is not apparent from the context of the discussion contained in the record. *New*, 338 S.C. at 318, 526 S.E.2d at 239.

As part of the first objection to the Solicitor's closing argument, defense counsel explained the basis of her objection was relevancy. Her second objection referred to the initial objection. After the trial judge's instructions, defense counsel requested curative instructions. Upon denial of the request, defense counsel moved for a mistrial. We hold the issue is preserved for our review.

## B. The Test

A Solicitor's closing argument must be carefully tailored so it does not appeal to the personal biases of the jurors. *State v. Copeland*, 321 S.C. 318, 468 S.E.2d 620 (1996);

*State v. Linder,* 276 S.C. 304, 278 S.E.2d 335 (1981). Further, the argument may not be calculated to arouse the jurors' passions or prejudices and its content should stay within the record and its reasonable inferences. *Simmons v. State,* 331 S.C. 333, 503 S.E.2d 164 (1998). Moreover, the State cannot, through evidence or argument, comment upon a defendant's exercise of a constitutional right. *State v. Johnson,* 293 S.C. 321, 323, 360 S.E.2d 317, 319 (1987)("When an accused asserts a constitutional right, it is impermissible for the state to comment upon or argue in favor of guilt or punishment based upon his assertion of that right.").

The test of granting a new trial for alleged improper closing argument is whether the Solicitor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Darden v. Wainwright,* 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986); *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); *State v. Patterson,* 324 S.C. 5, 482 S.E.2d 760 (1997); *State v. Coleman,* 301 S.C. 57, 389 S.E.2d 659 (1990). *See also State v. Brisbon,* 323 S.C. 324, 474 S.E.2d 433 (1996)(test of granting new trial for alleged improper closing argument of counsel is whether defendant was prejudiced to extent that he was denied a fair trial).

We find the Solicitor's comments are highly inappropriate and constitutionally impermissible.

## C. Harmless Error Analysis

Improper comments during closing argument, however, do not automatically require reversal of a conviction if they are not prejudicial to the defendant. *State v. Huggins,* 325 S.C. 103, 481 S.E.2d 114 (1997); *State v. Primus,* 341 S.C. 592, 535 S.E.2d 152 (Ct.App.2000), *cert. granted.* The harmless error rule governs improper comments made by a Solicitor during closing argument. *Primus,* 341 S.C. at 608, 535 S.E.2d at 160. It is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations. *United States v. Hasting,* 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983).

The trial judge is allowed wide discretion in dealing with the range and propriety of argument of the Solicitor to the jury. *State v. White*, 246 S.C. 502, 144 S.E.2d 481 (1965); *State v. New*, 338 S.C. 313, 526 S.E.2d 237 (Ct.App. 1999). The defendant bears the burden of proving the improper argument deprived him of a fair trial. *Johnson v. State*, 325 S.C. 182, 480 S.E.2d 733 (1997); *State v. Copeland*, 321 S.C. 318, 468 S.E.2d 620 (1996). *See also Coleman*, 301 S.C. at 61–62, 389 S.E.2d at 661 (appellants bear burden of proving error and prejudice which resulted in denial of fair trial). An appellate court will review the alleged impropriety of the Solicitor's argument in the context of the entire record, including whether there is overwhelming evidence of the defendant's guilt. *See Simmons v. State*, 331 S.C. 333, 503 S.E.2d 164 (1998); *State v. Linder*, 276 S.C. 304, 278 S.E.2d 335 (1981).

Officers Jeter and Hopkins testified Hamilton assaulted Jeter and attempted to repeatedly assault him. Hamilton admitted he stabbed Jeter. Considering the State's closing argument in the context of the entire record, we find the court's error in allowing the Solicitor's improper comments during the jury argument were harmless in light of the overwhelming evidence of Hamilton's guilt. The Solicitor's comments did not infect Hamilton's trial with unfairness to the extent that his conviction was a denial of due process. Although we find the comments highly inappropriate, we affirm the trial judge's ruling under a harmless error analysis.

### III. Subject Matter Jurisdiction

Finally, Hamilton argues the trial court lacked subject matter jurisdiction to try him for possession of contraband because the indictment failed to specify that the knife possessed by Hamilton had been declared contraband by the Director of the Department of Corrections. We disagree.

The indictment alleged "Hamilton ... did ... unlawfully possess a quantity of contraband, to wit: a homemade knife approximately 12 inches long in violation of § 24–3–950." South Carolina Code Annotated section 24–3–950 (Supp.2000) provides:

It shall be unlawful for any person to furnish or attempt to furnish any prisoner under the jurisdiction of the Department of Corrections with any matter declared by the director to be contraband. It shall also be unlawful for any prisoner under the jurisdiction of the Department of Corrections to possess any matter declared to be contraband. Matters considered contraband within the meaning of this section shall be those which are determined to be such by the director and published by him in a conspicuous place available to visitors and inmates at each correctional institution. Any person violating the provisions of this section shall be deemed guilty of a felony and, upon conviction, shall be punished by a fine of not less than one thousand dollars nor more than ten thousand dollars or imprisonment for not less than one year nor more than ten years, or both.

■■■ An indictment survives legal scrutiny if the offense is stated with sufficient certainty and particularity to enable the court to know what judgment to pronounce, and the defendant to know what he is called upon to answer and whether he may plead an acquittal or conviction thereon. *Carter v. State*, 329 S.C. 355, 495 S.E.2d 773 (1998); *State v. Ervin*, 333 S.C. 351, 510 S.E.2d 220 (Ct.App.1998). Under South Carolina Code Annotated section 17–19–20, an indictment passes legal muster if it "charges the crime substantially in the language of the common law or of the statute prohibiting the crime or so plainly that the nature of the offense charged may be easily understood and, if the offense be a statutory offense, that the offense be alleged to be contrary to the statute in such case made and provided." S.C.Code Ann. § 17–19–20 (1985). *See also State v. Tabory*, 262 S.C. 136, 202 S.E.2d 852 (1974) (indictment phrased substantially in language of statute which creates and defines offense charged is ordinarily sufficient). An indictment is sufficient to convey jurisdiction if it apprises the defendant of the elements of the offense intended to be charged and informs the defendant of the circumstances he must be prepared to defend. *Locke v. State*, 341 S.C. 54, 533 S.E.2d 324 (2000).

■■■ In reviewing the sufficiency of an indictment, an appellate court must "look at the issue with a practical eye in

view of the surrounding circumstances." *State v. Gunn,* 313 S.C. 124, 129, 437 S.E.2d 75, 78 (1993).

Hamilton relies upon *State v. Tabory,* 262 S.C. at 139–40, 202 S.E.2d at 853–54, to support his contention the indictment was insufficient. *Tabory* is inapposite because the indictment in *Tabory* did not charge a violation of the section relating to contraband.

Viewing the indictment "with a practical eye," we find it stated the charge with sufficient certainty to enable both the trial court and Hamilton to know what crime it alleged. The indictment specifically identified the contraband involved, incorporated the statute, section 24–3–950, by reference, and named the offense in the title. Under the circumstances of this case, we determine the indictment vested the trial court with subject matter jurisdiction.

## CONCLUSION

We hold Dr. Rathle's testimony was not relevant. Additionally, even if the testimony was relevant, the evidence should be excluded under Rule 403, SCRE, as tending to confuse the jury. We rule the Solicitor's comments during closing argument were highly inappropriate. We caution judges to strictly monitor the argument of Solicitors. Given the overwhelming evidence of Hamilton's guilt and based on a review of the record as a whole, we conclude the Solicitor's comments did not infect Hamilton's trial with unfairness so that he was denied a fair trial. Thus, the trial court did not err in overruling defense counsel's objections and motion for mistrial. Finally, Hamilton's indictment was sufficient to convey subject matter jurisdiction on the court. Accordingly, Hamilton's convictions are

**AFFIRMED.**

HEARN, C.J., and STILWELL, J., concur.