597 S.E.2d 831

**The STATE, Respondent,**

v.

**Richard Shawn PIPKIN, Appellant.**

**No. 3794.**

Court of Appeals of South Carolina.

Submitted March 8, 2004.

Decided May 11, 2004.

Rehearing Denied June 28, 2004.

Assistant Appellate Defender Aileen P. Clare, Office of Appellate Defense, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh and Assistant Deputy Attorney General Charles H. Richardson, all of Columbia; and Solicitor John Gregory Hembree, of Conway, for Respondent.

BEATTY, J.:

Richard Shawn Pipkin was convicted of attempted first-degree burglary and sentenced to twenty years imprisonment, suspended on service of ten years confinement and five years probation. He appeals this conviction, claiming error by the trial court in disallowing testimony regarding the victim's alleged bias and denying his motion for a directed verdict. We affirm.

## FACTS

Patsy Cribb and Pipkin began dating in November 1998. In March 1999, Pipkin moved into Cribb's apartment. By July, their relationship had become unstable and there were instances of physical abuse. Cribb moved out of the shared apartment in August.

In January 2000, Cribb moved into an apartment in the home of her sister and brother-in-law (Richardsons). After moving in with the Richardsons, Cribb began seeing Pipkin "occasionally."

According to Pipkin, he and Cribb began seeing each other four to five times a week and renewed the sexual aspect of their relationship after Cribb moved in with her sister.[1] Pipkin alleges he and Cribb arranged a method of entry whereby Pipkin would use one of two metal wires stashed on the porch

---

1. Cribb's sister and Richardson forbade her to see Pipkin. Accordingly, he would sneak into the apartment to avoid being seen by them.

to knock away the inside boards holding the doors in a locked position and let himself in. Pipkin stated that he utilized this method of entry about "twenty or thirty" times. Cribb denied any arrangement for Pipkin to visit her at this apartment.

Months after Cribb moved to the Richardsons' apartment, her relationship with Pipkin once again grew volatile. On September 13, 2000, there was an episode of physical abuse. Cribb obtained a restraining order against Pipkin barring him from any contact with her.

On October 27, 2000, Cribb went to a local bar and was talking with another man when Pipkin entered. Pipkin approached the two of them, threw a drink in Cribb's face, and was escorted off the premises by the bar's bouncers.

Later that night, Pipkin drove to Cribb's apartment and parked down the street away from the apartment. According to Pipkin, he approached the apartment, knocked, and, because he could not tell if Cribb was home, attempted to enter using the wire method for entry as discussed above. While attempting to enter, Pipkin heard Richardson exiting the home. Richardson was aroused out of sleep by "scratching noises" under his bedroom window. Once Pipkin saw Richardson, Pipkin "eased off" and walked away from the doors. Pipkin fled to his truck and waited. Richardson inspected the home and found severe damage to both a downstairs window and a steel door (neither a part of the sliding glass doors). Richardson woke Cribb and the police were called. The police remained at the home for about two hours.

Cribb returned to her bed shortly after the police left. Soon thereafter, she heard metal wire beating against the sliding glass doors. She entered her sister's apartment through an internal stairwell and woke Richardson. The two of them inspected the home and found a metal rod stuck in the sliding glass door. Once again the police were called. This time they arrived with Pipkin, whom they had detained a few blocks from the home. One of Pipkin's shoes was found near the home. Metal rods were found in his truck which matched the type found lodged in the sliding glass door. Richardson positively identified Pipkin and claimed that Pipkin admitted to him his attempted entry into the house and offered to pay for the damages. Pipkin was arrested.

While being detained at the Georgetown Detention Center, Pipkin was transported to a dental clinic. Also on board was inmate Joseph Allen ("Allen"). Allen testified that he and Pipkin discussed Pipkin's case on the way to the dentist. He stated that Pipkin admitted to attempting the break-in for the purpose of killing Cribb if she was with another man. His testimony included several corroborating details of the events of October 27, 2000. He claimed that, prior to trial, he had discussed the facts of the case with no one but Pipkin.

Pipkin was released on bond pending trial with strict orders not to contact Cribb. Cribb, nevertheless, visited Pipkin's apartment to talk with him the Friday after his release. After this meeting, they again began having a secret love affair, meeting four to five times a week. During this rekindled relationship, there was another incident of severe physical abuse.

At some point, Cribb allegedly broke into Pipkin's trailer home and damaged some items. Cribb denied these allegations, but admitted at Pipkin's trial that she was jailed for the incident. The judge also allowed testimony from Pipkin's two brothers regarding this damage and Cribb's presence at the trailer at the time of the damage. During the examination of Pipkin's father, however, the judge sustained objections to similar testimony on the ground of relevance.

Pipkin was convicted on one count of attempted first-degree burglary. This appeal follows.

## LAW/ANALYSIS

### I. Did the trial court err in disallowing Pipkin to present evidence of the victim's bias?

Pipkin contends that the trial court erred in excluding the testimony of Pipkin's father in relation to the alleged break-in and resulting property damage caused by Cribb. He argues that, since this testimony would attack the credibility of a witness and show bias, it was relevant evidence and should have been admitted. We disagree.

■ Generally, the admission of trial testimony is within the discretion of the trial judge and, absent an abuse of this discretion and resulting prejudice, will not be reversed by a

reviewing court. *See State v. Tucker,* 319 S.C. 425, 428, 462 S.E.2d 263, 265 (1995); *State v. Hamilton,* 344 S.C. 344, 355, 543 S.E.2d 586, 592 (Ct.App.2001).

■ The initial determination a trial judge makes in deciding whether to admit testimony is its relevance to the case before the court. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, SCRE. "Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *U.S. v. Abel,* 469 U.S. 45, 52, 105 S.Ct. 465, 469, 83 L.Ed.2d 450 (1984).

■ Even relevant evidence may be excluded on the grounds of its competency. *See Hamilton,* 344 S.C. at 355, 543 S.E.2d at 592. For instance, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403, SCRE. A trial judge's decision regarding the competency of testimony under this rule should be reversed only in exceptional circumstances and this court is obligated to give great deference to the trial court's judgment. *Hamilton,* 344 S.C. at 358, 543 S.E.2d at 593–94. This decision to exclude evidence under Rule 403 should not be reversed simply because an appellate court believes it would have decided the matter otherwise. *Id.*

■ Regardless of whether the trial judge abused his broad discretion in excluding Pipkin's father's testimony, the error was harmless as the evidence was cumulative. *See State v. Beckham,* 334 S.C. 302, 319, 513 S.E.2d 606, 614 (1999) (opining erroneous exclusion of cumulative evidence is harmless). Pipkin sought to show Cribb's bias through his father's testimony that his father acquired an arrest warrant for Cribb's allegedly burglarizing and damaging his mobile home.

The jury heard testimony from multiple witnesses as to Cribb's alleged break-in and property damage to Pipkin's trailer. Although Cribb denied having damaged the trailer, she admitted that Pipkin's father had her arrested for this damage. Not only did Cribb testify regarding the damage to the mobile home, Pipkin's brothers testified to seeing Cribb attempting to break into the trailer, and seeing the resulting damage. Since allegations of Cribb's wrongdoing were previously presented to the jury, it was within the trial judge's discretion to exclude Pipkin's father's testimony as cumulative. *See* Rule 403, SCRE. Even if excluded in error, the exclusion of evidence which would be merely cumulative to other evidence presented to the jury is harmless. *See State v. Schumpert*, 312 S.C. 502, 507, 435 S.E.2d 859, 862 (1993); *State v. White*, 353 S.C. 566, 575, 578 S.E.2d 728, 733 (Ct.App.2003).

## II. Did the trial court err in the denial of Appellant's motion for a directed verdict?

■ Because evidence was presented at trial showing that Cribb consented to his presence in her home, Pipkin claims that the elements of attempted burglary were not proven by the State and, therefore, his motion for a directed verdict should have been granted. We disagree.

■ In a motion for directed verdict, the trial court is concerned with the existence of evidence rather than its weight. *State v. Spann*, 279 S.C. 399, 402, 308 S.E.2d 518, 520 (1983). This evidence is "viewed in the light most favorable to the State to determine whether there is *any* evidence, either direct or circumstantial which reasonably tends to prove the guilt of the accused, or from which guilt may be fairly and logically deduced." *State v. Creech*, 314 S.C. 76, 83–83, 441 S.E.2d 635, 638 (Ct.App.1993) (emphasis added).

In the case at bar, testimony was presented by both sides on the issue of consent. Pipkin testified to an agreement with Cribb whereby he could "break-in" to Cribb's apartment whenever he so desired. Cribb testified that there was no such agreement and that she had taken out a restraining order against Pipkin at the time of the attempted burglary. Nowhere in the record is evidence reflecting any specific consent to enter the apartment on the evening in question.

It is the duty of the trial judge, when ruling on a motion for a directed verdict, to submit the case to the jury when there is any substantial evidence, either direct or circumstantial, which reasonably tends to prove the defendant's guilt. *State v. Brazell,* 325 S.C. 65, 77, 480 S.E.2d 64, 71 (1997). Since there was conflicting evidence presented on the issue of consent, the trial judge acted properly in denying Pipkin's motion and submitting the case to the jury.

## CONCLUSION

For the foregoing reasons, the decision of the trial court is **AFFIRMED.**

HEARN, C.J., and ANDERSON, J., concur.